# Butterfield *versus* Lathrop *et al.*

1. Under the Acts of April 6th 1869 and January 20th 1870 (the reference of cases in Bradford and other counties), exceptions to the referee's rulings on evidence must be taken at the time they are made, on review in the Supreme Court the finding of the referee as to facts is as conclusive as a verdict.

2. The finding of facts is equivalent to a special verdict, and must have the same fulness and certainty, so that the judgment on the report shall be the conclusion of law on the facts.

3. The exceptions to the report are the substitute for bills of exception to the charge of the court and answers to points.

[Butterfield *v.* Lathrop.]

4. The Common Pleas has no power over the decision of the referee.

5. Baxter and numerous other farmers delivered milk to a cheese factory; each was credited with the amount of his milk, and all was manufactured together; the company sold all the cheese; each farmer was charged with the expense, and received his share of the proceeds in proportion to the milk furnished. Baxter's interest in the cheese, &c., was sold under an execution against him. *Held*, that the sale by the factory converted his interest into a money demand, and this interest was therefore not the subject of a levy.

6. The arrangement at the factory did not constitute the farmers' partners, nor tenants in common in the cheese: nor was there an agency or bailment as to the particular milk delivered.

7. It was a sale of milk to be paid for in a certain time and manner.

March 12th 1872.   Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ.   AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Susquehanna county :* No. 52, to January Term 1872.

This action was commenced January 27th 1869, before a justice of the peace, by A. & D. R. Lathrop against A. D. Butterfield; the justice gave judgment for the plaintiff for $57 35; the defendant appealed from the judgment to the Court of Common Pleas, where it was referred to I. E. Carmalt, Esq., under the Act of April 6th 1869 (Pamph. L. 725), authorizing references in the county of Bradford; extended with additions to Susquehanna and Wyoming counties, by Act of January 20th 1870 (Pamph. L. 85).

By these acts parties by agreement may refer their cases to one referee, the trial to be conducted as "by the court with a jury;" the referee to state the facts found and his conclusions of law separately, his decisions may be excepted to and reviewed as if tried by the court with a jury, "and the referee may as the court, settle exceptions on appeal or writ of error to the Supreme Court." "The report of the referee on the whole issue shall stand as the decision of the court, and the judgment shall be entered as if the action had been tried by a court before a jury; in case of reversal on appeal or writ of error the Supreme Court shall enter the proper judgment or direct a new trial," &c.   The prothonotary shall enter judgment on the report, and either party may file exceptions to the report within ten days, but not after, and that there may be opportunity for a writ of error or appeal to Supreme Court, execution shall not issue within three weeks from the entry of judgment.

The following is the referee's report on the facts :—

"On the 1st of April 1868, O. W. Baxter took the farm of Mrs. Zilpha Deans to work on halves for one year, to be to one-half of the expense and have one-half of the products.   Ten cows upon the property were included in that arrangement.

"He first made butter, but subsequently, after consulting Mrs. Deans, took his milk to the 'Bridgewater Cheese Factory,' to be made into cheese and sold according to the custom of that establishment.   He commenced carrying milk to the factory on the 18th

[Butterfield *v.* Lathrop.]

day of May, A. D. 1868.   He ceased working and left the farm on
the 22d day of July, A. D. 1868 ; how and under what circum-
stances does not appear.

" A. D. Butterfield, the defendant in this action, testified, and
was not contradicted, that in the year 1868 he was one of a com-
mittee of three to manage the ' Bridgewater Cheese Factory,' on
the part of its patrons, and sell the cheese.   He only kept the
books of sale.   The practice at the factory was to credit the dif-
ferent patrons of that establishment with the number of pounds
of milk received—to charge them one and a half cent per pound
for what cheese was made—to credit the parties again with the
proceeds of the sales in proportion to the amount of milk brought.
He, with two others upon the committee, had charge of all sales
of cheese in 1868.   He kept the books containing the account of
the sales, but only knew whom the cheese was made for by the
account, which was kept by a girl at the factory.   By that account,
Butterfield, the defendant, settled with Mrs. Deans and paid her
$273.73.   This included Mrs. Deans's personal account and Deans
and Baxter's account.   The latter began May 30th and concluded
July 25th 1868.   After which time the account was kept in the
name of Mrs. Deans.   At the end of the season the defendant
paid the whole of both accounts to Mrs. Deans.

" Deans and Baxter were credited at the factory from the 18th
day of May to the 22d day of July with 10,422 pounds of milk.
The average amount of milk during the season required to make a
pound of cheese, was 10½ pounds.   The average of sales that sea-
son was 14¾ cents per pound net for cheese.   One-half the above
cheese only belonging to Baxter, the referee holding the quitting
of Baxter and the change of the account from Deans & Baxter to
Mrs. Deans to constitute a surrender at law, and cannot affect
third parties in interest.

" By the sheriff's return to judgment as No. 575 of August Term
1868, interest on note given by O. W. Baxter to A. & D. R. La-
throp, the note being given to satisfy an account at A. & D. R.
Lathrop's store of $52.15 ; the balance was fictitious or to secure
future advance.

" He, the sheriff, received his writ July 20th, at 8¼ o'clock A.
M., 1868, and sold a quantity of cheese (which was proved to have
been Baxter's interest in the cheese at the factory) on the 30th
day of July.

" The sale took place opposite Mrs. Deans's house, about ten
rods from it.   She did not forbid the sale, though she said to D.
R. Lathrop, who bid off the cheese, and to the sheriff, that ' they'd
better not touch anything—they might get their fingers burned.'

" Immediately after sheriff's sale, Butterfield, the defendant,
was notified that A. & D. R. Lathrop had bought Baxter's inter-

[Butterfield *v.* Lathrop.]

est in the cheese at the factory and wanted the money for it when sold.

"The practice at the factory was to sell the cheese at the factory at different times through the season. The cheese was made in bulk, and there was no separation of the cheese. The factory is about one and a half mile from Mrs. Deans's farm-house. The sheriff's sale on Lathrop's judgment was at Mrs. Deans's house; cheese not there, but was at factory, or had been sold previously by the committee."

He stated his conclusions of law as follows :—

"Defendant's law points. * * *

"3. That there was no levy upon the cheese, it not being a chattel—the sale was irregular.

"As a legal principle, the referee concedes this point, but does not think it sustained by any evidence on the subject of the levy but the return of the sheriff, which appears to be regular.

"4. That the taking of the milk to the factory was a sale of the milk, and the proper remedy to secure Baxter's interest was attachment, instead of levy and sale.

"From this position the referee dissents. Those working in the factory were in the employ of the patrons of the factory, making and selling cheese for those patrons at a fixed price, 1½ cent per pound. The patrons left their milk at the factory as bailors, to be manufactured into cheese by the bailees, who also possessed a power of sale over the product.

"5. A tenant leaving before the expiration of his lease, has no interest in the property upon the farm.

"This may be true of growing crops or other after-acquired property, but cannot be true as against the vested interest of third parties, where, as in this case, there is no evidence of damage or dissent." * * *

The defendant removed the record to the Supreme Court.

*Littles* and *Blakeslee*, for plaintiff in error.

*J. B. & A. H. McCollum*, for defendants in error.

The opinion of the court was delivered, March 30th 1872, by

SHARSWOOD, J.—In the court below this cause was referred under the Act of January 20th 1870, Pamph. L. 85, extending to Susquehanna county the provisions of the act entitled "An act authorizing the reference of civil actions in the county of Bradford," passed April 6th 1869, Pamph. L. 725. By the 4th section of this latter act it is provided that the referee "shall state the facts found and the conclusions of law separately, and his decision shall be given and may be excepted to and reviewed in like manner as though tried by the court with a jury, but not other-

wise." It follows that upon the rulings of the referee on the trial before him upon questions arising as to the admission or rejection of evidence, the party objecting must take his exception at the time, and that on review in this court the finding of the referee as to the facts must be regarded as conclusive, just as the verdict of a jury. It is evident that the act contemplates that there shall be in each case what is equivalent to a special verdict. The finding of the referee must have the same certainty and fulness as is required in a special verdict, so that the judgment shall be the conclusion of law upon the facts. Ten days, however, are given after the report is entered to file exceptions thereto, which we take clearly to have been intended by the legislature as a substitute for bills of exceptions to the charge of a court and their answers to points presented. No power is given by either of these acts to the Court of Common Pleas over the decision of the referee. "The report," says the Act of 1869, "of the said referee upon the whole issue shall stand as the decision of the court, and judgment shall be entered in the same manner as if the action had been tried by the court before a jury."

We think there was error in the conclusion of the referee upon the facts as found by him. Indeed upon a very material question the finding would be bad as a special verdict for uncertainty. He says: "The sheriff's sale on Lathrop's judgment was at Mrs. Deans's house; cheese not there but was at factory, or had been sold previously by the committee." When sold? previously to the levy or previously to the sale? If previously to the levy, it is abundantly clear that Baxter had no interest remaining in any cheese, but it had been converted into a mere money demand on the factory. But suppose that no sale had taken place? The arrangement as proved between the farmers—owners of milk—and the cheese factory, is somewhat peculiar. It certainly did not constitute the parties partners. Nor were the milk-owners tenants in common of the cheese when manufactured. No one could have claimed an individual share, and considered the sale by the factory as a conversion. Neither replevin nor trover could have been maintained. By the agreement·the milk delivered from time to time by the different customers was thrown into a common mass, made into cheese, sold by the committee of the factory, and then the milk paid for at the price produced by the cheese, allowing ten and a half pounds of milk to one pound of cheese, deducting the cost of manufacturing. "The practice at the factory," says the referee, "was to credit the different patrons of that establishment with the number of pounds of milk received—to charge them one and a half cent per pound for what cheese was made—to credit the parties again with the proceeds of the sales in proportion to the amount of milk brought." There was evidently no bailment or agency as to the particular milk delivered. By the very terms

[Butterfield *v.* Lathrop.]

of the agreement it was to be mixed and confused in part or in whole with other milk indefinitely. It was a sale of the milk to the factory, for which they were to pay at a certain time and in a certain manner. It is not to be distinguished from the case of Jenkins *v.* Eichelberger, 4 Watts 121. There the contract was to deliver hides to a tanner at a certain price—the hides when tanned to be returned to the person who had delivered them, to be sold by him, and out of the proceeds, after deducting the price at which they had been delivered, the balance to be paid to the tanner. It was evidently a contrivance by which the hides were to be protected from the creditors of the tanner, but this court held it to be a sale. The same doctrine was maintained in Prichett *v.* Cook, 12 P. F. Smith 193. It is true in both these cases the question was as to creditors of the manufacturer. But upon the facts as reported by the referee, it does not appear that there was anything to qualify the effect of the absolute delivery of the milk, to be used and mixed indiscriminately with other milk, and for which the party was afterwards to receive a credit at a certain rate. Baxter had then, from the delivery of the milk, a mere demand for the price of its product as agreed upon; and his interest was not such as could be seized and sold on a writ of fieri facias.

Judgment reversed.