## Thornton *versus* The Enterprise Insurance Co.

1. An insurance was made to T., who gave a mortgage to W. T. assigned his policy to W. as security, and W. assigned to E. T. afterwards conveyed the property insured to C., and assigned him the policy; the insurance company refused to approve the assignment. E. afterwards became the owner of W.'s mortgage, and the company insured his interest as mortgagee. By the policy on payment of a loss the mortgagee was to assign the mortgage to the company: the property was burned, and E. received the amount of his insurance, and assigned the mortgage to the company: *Held*, that the assignment was properly made, that T. had no claim upon the money paid for the loss, and that the company might recover from T. the amount due on the mortgage.

2. Under the Act of June 22d 1871, supplement to act extending to Luzerne county the Bradford county law of 1869 relating to reference, the Supreme Court is not authorized to review the evidence, and re-examine the decision of the court below as to facts.

3. Writs of error bring up questions of law and appeals questions both of fact and law.

March 14th 1872.     Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ.     AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Luzerne county*: No. 279, to January Term 1872.

This was a scire facias sur mortgage, issued September 21st 1868, by The Enterprise Insurance Company against Joseph D. Thornton; M. E. Coolbaugh, the terre-tenant, was on his own application permitted to appear and defend.

The case was referred to A. Farnham, Esq., under the Act of April 8th 1869, relating to references, in Bradford county, with its supplements extended to Luzerne and Wayne counties, by Act of March 23d 1870. By a supplement to the last act, passed June 22d 1871 (Pamph. L. 1363), it is provided that the report of the referee on all questions of law and fact, with the whole testimony and bills of exception, shall be filed in the prothonotary's office, and in order to give the parties an opportunity to enter exceptions "to the findings of fact and law, and to the admission and rejection of testimony," the report shall not be filed for ten days after he has notified the parties; the Court of Common Pleas to hear and decide on all exceptions so filed, reserving to the court the power of recommitting the report, and to enter the proper final judgment, which may be removed by writ of error to the Supreme Court, to be heard as other cases; the Supreme Court may enter the proper judgment or direct a new trial. This act to apply to pending cases.

The scire facias was on a mortgage, dated August 29th 1863, from Joseph D. Thornton to George Williams, on certain real estate in the city of Scranton; the mortgage by assignment became the property of Charles E. Ellis, to whom a policy of insur-

ance was issued by the plaintiffs, insuring him against loss, "by reason or means of fire to the property described" in the mortgage.

The following conditions were annexed to the policy :—

"4. Where a ground-rent, mortgage or other lien on real estate is specifically insured, such insurance shall not be affected by any sale or change of occupation or use of the premises mortgaged or charged, without the knowledge of the insured, though the risk may be thereby increased: *Provided*, That the insured shall, within thirty days after he shall be informed of any such sale or change of occupation or use, give due notice thereof to this company.  In all such cases, upon any loss, the company shall have the option of paying to the insured either such proportion of the sum insured as the damage by fire to the premises mortgaged or charged shall bear to their value immediately before the fire, but not exceeding such value, or else the full amount of such lien or mortgaged debt, or the principal of such ground-rent, in which latter cases this company shall be entitled to require an assignment of such ground-rent, mortgage or other lien, in due form, together with a declaration by the owner of the ground, or (if the same cannot be obtained), then other sufficient evidence that he has no defence or offset thereto.  All such insurance shall be subject to the express condition that a marketable title can be shown to the premises, and that the mortgage, lien or ground-rent is the first lien or encumbrance thereon, unless otherwise expressed in this policy.

"7. This company may at any time and in all cases terminate the insurance and cancel this policy, after giving thirty days' notice of their intention to do so ; and at the expiration of the said thirty days the insurance shall cease, and the deposit-money shall be returned without deduction on the surrender of this policy to the company.

"8. Where the property specifically insured hereby shall be sold, this policy shall be void, unless assigned to the purchaser at the execution of the deed ; and in such case, and also in case of any assignment of this policy as collateral security for a ground-rent mortgage, or other lien on the premises insured, such assignment shall be brought to the office of the company for approval within thirty days thereafter, or the policy shall be in like manner void. The company retain the right to approve an assignment or not, at their option ; in the latter case the deposit-money will be returned without deduction, on surrender of policy.  For every approval of an assignment there shall be paid fifty cents."

The referee heard a large amount of testimony, and found "the following conclusions of fact :"—

1. That on the 15th of April 1863, the plaintiffs issued to Joseph D. Thornton a perpetual policy of insurance (No. 1710) for

[Thornton *v.* Enterprise Insurance Co.]

$4000, afterwards increased to $5000, upon certain buildings in the city of Scranton, in Luzerne county.

2. That on the 29th of August following Thornton executed to George Williams a mortgage upon the insured property to the amount of $5000, and at the same time, with the approval of the company, assigned over the policy of insurance to him, as collateral security.

3. That on the 1st of December 1864, Williams assigned the mortgage to C. Earle Ellis.

4. That on the 14th of June 1865, Thornton conveyed the property to M. E. Coolbaugh, and two days afterwards executed to him an assignment of the policy, receiving from Coolbaugh the premium he had previously paid to the insurance company—that Coolbaugh took the policy to the office of the company to obtain their approval of the transfer to him, and there left the policy, together with the usual fee of fifty cents for such approval.

5. That the company refused to approve the transfer, and refused to recognise Mr. Coolbaugh as the owner of the policy.

6. That the company did not, impliedly nor directly, waive a formal approval of the assignment of the policy by writing endorsed thereon.

7. That the company did not agree with Coolbaugh, nor with his attorney, Lewis D. Vail, to issue a new policy to Coolbaugh, to be made collateral to the mortgage.

8. That the company refused to insure the interest of Mr. Coolbaugh, and consented only to insure the mortgage in a reduced amount, viz., the exact sum remaining due upon the mortgage, and that it was agreed by the parties that the mortgagee should be thus secured.

9. That on the 7th of July 1865, the company issued to C. Earle Ellis, "mortgagee," a perpetual policy of insurance, No. 3314, on the buildings in question in the sum of $3000, which policy was intended to cover the interest of the mortgagee alone, and to insure simply the mortgage-debt, and which contained a provision for the assignment of the mortgage to the company in the event of a loss, and the payment of the same by them, and that with the consent of Coolbaugh, or of his attorney, Vail, the deposit-money was paid out of the premium which had been returned to Joseph D. Thornton.

10. That afterwards, on the 3d of March 1866, $1000 having in the meantime been paid on the mortgage, policy No. 3314 was surrendered, and a new policy, No. 3972, with similar terms, was issued to C. Earle Ellis in the sum of $2000.

11. That during the continuance of this last policy, the buildings insured were destroyed by fire, and that Ellis received from the company the amount of his insurance, and that in pursuance

[Thornton *v.* Enterprise Insurance Co.]

of the 4th condition of the policy he assigned over the mortgage to them.

12. That the amount of principal, bearing interest, due on said mortgage, is $2000.

The defendants asked the referee to find the *facts* according to certain specifications presented by him; he declined all, except so far as they were in accordance with his foregoing finding.

In answer to certain points of law submitted by defendant, the referee, amongst other things, said:—

.;.. * * * "I take the law to be, that an insurance by a mortgagee, as such, is presumptively an insurance of the mortgage-debt, unless the intent to insure the whole legal and equitable interest, in behalf of both the mortgagor and mortgagee, is apparent from either the declarations or admissions of the parties, or from the agreement between the mortgagor and mortgagee, or from the circumstances of the case. This intent, as between the mortgagor and mortgagee, thus made apparent, will override the insurer's right of subrogation, unless the policy provides for transferring the interest of the insured to him, upon payment of the loss. In the latter case the intention becomes expressed by the agreement between the parties to the contract of insurance, and the rights of the insurer will, under the policy, prevail over any understanding between the insured and his debtor.

"As the 4th condition of the policy issued to Ellis contains a provision of this nature, the right of the company to a cession of the mortgage has, upon payment of the loss, become vested under the terms of the policy, and is paramount to any trust that might otherwise have been implied from the fact of the premium having been paid by Coolbaugh." * * *

The referee's conclusions of law were:—

"The plaintiffs having insured the mortgage-debt owned by C. Earle Ellis, and a loss having occurred, and having paid over to him the amount of insurance, in discharge thereof, and having received from him an assignment of the bond and mortgage, in accordance with the terms of the policy, are therefore the legal and equitable owners of the bond and mortgage, and are entitled to recover, in this action, the balance due on said bond and mortgage, with interest from the date of assignment, as is claimed by them.

"I report that judgment should be entered in favor of the plaintiffs and against the defendant in said action, for the sum of two thousand four hundred and ten dollars and sixty-six cents."

The defendant excepted to the 5th to 10th findings of the referee on the facts; and that he had not found the law as requested by the defendant.

The Court of Common Pleas (Harding, P. J.) directed judgment to be entered for the plaintiffs for $2410.66, in accordance with

[Thornton *v.* Enterprise Insurance Co.]

the report of the referee, with interest from September 28th 1871.

The defendant took a writ of error.   His 1st–6th and 8th assignments of error were to the referee's finding of the facts.

The 7th and 9th–12th assignments were to the referee's conclusions of law.

*D. C. Harrington,* for plaintiff in error, argued that the Supreme Court under the Acts of Assembly could review the accuracy of the findings of facts.   The insurance being of the property and not of the mortgage-debt, the insurers are not entitled to a cession of the mortgage, but the owner is entitled to have the insurance-money applied to the mortgage : Smith *v.* Columbia Insurance Co., 5 Harris 253 ; Insurance Co. *v.* Updegraff, 9 Harris 513 ; Towley *v.* Palmer, 5 Gray 551 ; Flanders on Insurance 362, 369.

Where the mortgagee insures generally he may recover the whole amount of insurance, under a trust, as to the surplus, to hold it for the mortgagor : Flanders on Insurance 364 ; Carruthers *v.* Sheddon, 6 Taunt. 17.   If the mortgagee insures his interest as mortgagee, and the mortgagor pays, or agrees to pay, the expenses of obtaining the insurance, the mortgagee would have lien on the insurance-money as security for his debt ; yet the mortgagor could compel its application to the payment of the mortgage-debt, and any surplus would belong to him : Flanders on Insurance 367, 368 ; Holbrook *v.* Am. Ins. Co., 1 Curtis 193 ; King *v.* The State Mut. Ins. Co., 7 Cush. 1 ; Mix *v.* Hotchkiss, 14 Conn. 32 ; Concord Mut. Ins. Co. *v.* Woodbury, 45 Maine 454 ; Bradford *v.* Greenwich Ins. Co., 8 Abb. N. Y. 261 ; Kernochan *v.* The N. Y. Bowery Ins. Co., 17 N. Y. 433.   Conditions and provisions in policies of insurance are to be construed most strictly against the underwriters, as they tend to narrow the range and limit the force of the principal obligation : Hoffman *v.* Ætna Fire Ins. Co., 32 N. Y. 405.

*S. Woodward* and *R. C. McMurtrie,* for defendants in error, cited the several acts in relation to reference.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—Upon the facts found by the referee there can be no doubt that the judgment below was right.   He reported that the Enterprise Insurance Company distinctly refused to insure Mr. Coolbaugh the owner, and that the policy issued to the mortgagee was intended to insure simply the mortgage-debt.   On its face it was " to indemnify C. Earle Ellis, mortgagee, for all damage or loss (not exceeding the sum or sums hereinafter recited), which may hereafter happen by reason or means of fire to the property herein described."   It might have presented a different question had it been as in Insurance Co. *v.* Updegraff, 9 Harris 513, " to

[Thornton *v.* Enterprise Insurance Co.]

make good to the assured all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property described." Here was a contract specifically to indemnify C. Earle Ellis as mortgagee. It would seem, therefore, upon its face, apart from the parol evidence, upon which the referee found the intention of the parties, to have been a contract by which the mortgage was specifically insured, and in such case by the express provision of the policy, upon payment by the insurance company of the amount of the mortgage-debt, they are entitled to require an assignment of such mortgage. We are not, however, to be understood as affirming the principle stated by the referee, that naming the assured as "mortgagee," raises any presumption that it is the mortgage-debt alone which is specifically insured where the policy is to pay or make good any loss or damage by fire to the property insured. This disposes of the 7th, 9th, 10th, 11th and 12th assignments.

The remaining assignments relate exclusively to the findings of fact by the referee. It is necessary, therefore, to consider the question, whether it is competent for this court to examine these findings as upon a motion for a new trial under the Acts of Assembly which authorize references of this character in Luzerne county. These acts are: "An act authorizing the reference of civil actions in the county of Bradford," passed April 6th 1869, Pamph. L. 725; "An act to extend to the counties of Wayne and Luzerne the provisions of an act authorizing the reference of civil actions in the county of Bradford," passed March 23d 1870, Pamph. L. 540; and "A supplement to an act to extend to the counties of Wayne and Luzerne the provisions of an act authorizing the reference of civil actions in the county of Bradford," &c., passed June 22d 1871, Pamph. L. 1363. In Butterfield *v.* Lathrop (*antea* p. 225), decided at Philadelphia, March 30th 1872, we held that under the Act of 1869 the report of the referee on the facts was to be considered in this court as the special verdict of a jury; and if sufficient as such a verdict, the jurisdiction of this court as a court of error was only to determine whether the judgment was right. Under that act the Court of Common Pleas had no power whatever to re-examine and pass upon the report of the referee. The Act of 1871 does afford a remedy in this respect. It provides that exceptions may be filed in the Court of Common Pleas " to findings of fact or law, and to the admission or rejection of testimony," and it is made the duty of that court " to hear and decide upon all exceptions so filed ' to the report of the referee, reserving to the court, however, the power of committing the report again to the referee should justice require it.' " Thus far the proceeding is conformed to the course of the common law upon a special verdict. The court may award a new trial for any reasons of fact or law; or they may reverse the conclusion of

21 P. F. SMITH—16

[Thornton *v.* Enterprise Insurance Co.]

the referee and enter a different judgment upon the verdict, if they are of opinion that the law so requires.   What follows relates to the removal of the cause to this court.   After enacting that either party may take exceptions to the judgment of the court, and that upon request the court shall reduce their opinion to writing and file the same, it proceeds : " Upon the judgment of the court a writ of error may be taken to the Supreme Court by either party, which shall be heard by the Supreme Court as writs of error in other cases, and they shall enter the proper judgment, or direct a new trial."   It is the settled distinction between writs of error and appeals, that the former bring before the superior court questions of law only—the latter, both questions of fact and law. Very clearly, therefore, when it is provided that the cause shall be heard in this court as writs of error in other cases, it was not intended to confer the discretionary authority of reviewing the evidence, and re-examining the decision below as to the facts.   It is supposed that the power " to direct a new trial" implies as much,—but there are of course many cases in which a court of errors awards a *venire facias de novo*, which is in effect to direct a new trial—as whenever an error has been committed in the admission or rejection of evidence appearing on the record by bills of exception, the sealing of which by the referee is expressly required by the Act of 1871.   We say nothing when, upon the whole evidence filed of record, there is what would be equivalent to no evidence to submit to a jury.   That has not been and cannot be pretended in this case.   It is our duty to mould the course of proceeding under the special acts providing for the reference of civil cases, so as most nearly to conform to the common law, and to be regulated by principles and rules most familiar to all.

Judgment affirmed.