## Borough of Dunmore *v.* Conrad, Appellant.

*Municipalities—Sewers—Cost—Assessments — Foot-front rule—*
*Lien—Revival—Amendment.*

The foot-front rule of assessments is not a principle of taxation, but is merely a convenient method reasonably certain to produce a substantially fair result in built-up sections of a city, and adopted and sustained as a practical adjustment of proportional benefits. As the method furnishes only a working rule for practical adjust-

ment of proportional assessments, the appellate courts cannot, without considering the evidence, determine if the rule has been misapplied.   Where the evidence has been omitted from the record the appellate court relies upon the presumption in favor of the validity of the ordinance and its application.

Joining three lots in one assessment will not invalidate a municipal lien, filed for assessments under the foot-front rule for the erection of a sewer, especially where it appears that the property is a single lot, as mentioned in the claim.

A municipal lien is not lost where a judgment is entered by the prothonotary pursuant to the direction of a referee within two days before the expiration of the five-year period from the entry of the original judgment.   The decision by the referee had the same weight and effect as a verdict of a jury, and under the provisions of section 10 of the Act of June 4, 1901, P. L. 367, the lien continued five years from the date of such entry.

An amendment, adding to the claim as originally filed, certain details of the kind and character of work done, is properly allowed.

PORTER, J., dissents.

Argued March 8, 1921.   Appeal, No. 30, March T., 1921, by defendant, from judgment of C. P. Lackawanna County, Nov. T., 1915, No. 457, on award for plaintiff in the case of Borough of Dunmore v. A. L. Conrad. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.   Affirmed.

Sci. fa. sur municipal lien for sewer assessment.   Before NEWCOMB, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to W. J. Fitzgerald, Esq., as referee, who directed the prothonotary to enter judgment in favor of the plaintiff for $1,110.88.   Defendant appealed.

*Errors assigned,* among others, were refusing petition to strike off municipal lien, and dismissing exceptions to the report of the referee.

*R. W. Archbald* and *A. A. Vosburg,* for appellant.—
The statement of lien was fatally defective and should
have been stricken off: Russell v. Bell, 44 Pa. 47; Scran-
ton v. Jones, 133 Pa. 219; Act of June 4, 1901, section
11, P. L. 368, Purd. 2637; Erie v. Willis, 26 Pa. Su-
perior Ct. 459.

The lien of the municipal claim expired by its own
limitations, no verdict or judgment having been recov-
ered within five years: Scranton v. Genet, 232 Pa. 272;
Miller v. Belmont P. & Rubber Co., 268 Pa. 51; Fisher
v. Fisher, 74 Pa. Superior Ct. 538; Stephen's Executors'
App., 38 Pa. 9; Stephens v. Downey, 53 Pa. 424.

*R. H. Harris,* of *Knapp, O'Malley, Hill & Harris,* and
*R. A. Zimmerman,* and with them *J. W. McDonald,* for
appellee, cited: Wilson v. Keller, 195 Pa. 98; Bradley
v. Vernon, 166 Pa. 603; Wagenhorst's App., 126 Pa. 127;
Brooks v. Church, 135 Pa. 137.

OPINION BY LINN, J., April 26, 1921:

In numerous assignments appellant presents the fol-
lowing matters for review: invalidity of the assessment
because (1) made by an illegal application of the foot-
front method; (2) three lots were joined in one assess-
ment; (3) the borough modified the contract; (4) it
was not substantially performed; (5) he also asserts
that pursuant to section 10 of the Act of June 4, 1901,
P. L. 367; Act of April 2, 1909, P. L. 194, the lien ex-
pired before verdict or judgment on the claim; (6) that
amendment of the claim should not have been permitted.

The record shows a trial on the merits of a scire facias
sur municipal claim to recover a special assessment by
the foot-front method on defendant's real estate for its
share of the cost of a sewer laid in front of it.   This trial
was conducted before a referee by agreement of the par-
ties approved by the court pursuant to the local ref-
erence Act of April 6, 1869, P. L. 725, supplemented by
the Act of June 22, 1871, P. L. 1363.   Appellant has not

brought up the testimony, his counsel having stated at the argument that they would present their contentions as apparent on the record without the evidence. Some eighty exceptions were filed to the referee's findings of fact and conclusions of law and all were dismissed.

In 1909 an ordinance was approved providing for the construction of a system of public sewers in section "S" of the second sewer district of the borough, specifying in considerable detail what should be done and the streets in which the sewer should be laid and appropriating for payment the sum of "$33,759.40, or so much thereof as may be necessary, which sum shall be derived from assessments on the properties fronting, adjoining and abutting on and along the line of the said sewers according to the foot-front rule; provided, that on all corner lots more than eighty feet in depth, where the sewer passes on both sides, or where a sewer has previously been constructed on the short side or will hereafter be constructed on the short side, an allowance of two-thirds of the length of the long side shall be made; and on all lots where the sewers pass at both ends, an allowance of one-half of one end shall be made, and on all lots less than seventy feet in depth, where the sewer passes along the long side only, an allowance of one-half of the length of the lot shall be made, and on all lots where the sewer passes at both ends and on one side, an allowance of the side and one-half of the shortest end shall be made, and which allowances are deemed just and equitable by the council."

Pursuant thereto a contract for the work was duly executed but before it was completed a supplemental agreement was made providing that the diameter of the sewer be reduced in some streets and that a change in level be made for a large part of its length, thereby reducing the amount of excavation required as well as the cost of the work. Performance of this contract was the subject of litigation reported as Conrad v. O'Boyle et al., 51 Pa. Superior Ct. 467. The sewer was completed in

front of defendant's property in 1910 and on October
31, 1910, this municipal claim was filed; on October 29,
1915, a sci. fa. to revive was filed.   An affidavit of de-
fense was put in May, 1916, and on March 24, 1920, the
parties made the agreement of reference and waived
trial by jury.   The report of the referee was filed Oc-
tor 27, 1920, and on December 30, 1920, the court dis-
missed the exceptions and confirmed the report of the
referee who in this report had directed the prothonotary
to enter judgment for plaintiff for $1,110.88 (apparently
according to established local practice under the refer-
ence statutes: Torrey v. Scranton, 133 Pa. 173, 179;
McCarthy v. Masters, 142 Pa. 82, 83).   The referee found
that the change in level of the sewer resulted in reducing
the cost of the excavation not only by $1,335.90 as the
engineer had reported and the council had approved, but
by $5,874.08 or at the rate of fifty cents per lineal foot
of sewer and that "the defendant is entitled to a deduc-
tion of twenty-five cents each foot front from the amount
of the assessment and no other reductions."

1. In the municipal claim filed it is stated that "....."
the assessment was made in and by said ordinance and
was according to the foot-front rule with certain allow-
ances for corner, triangular and other irregularly shaped
lots and the amount of foot frontage with which the said
lot was assessed is 348 feet."   Appellant complains that
the referee and the court declined to hold the assessment
invalid for alleged misapplication of the foot-front rule.
Assessments by that method are authorized by the stat-
ute governing the borough's action.   Section 2 of the Act
of May 15, 1889, P. L. 220, provides: "Whenever any
borough shall determine to construct any public sewer,
it shall have power, by ordinance or ordinances duly
passed, to assess the cost thereof as a sewage tax upon
the property adjoining or adjacent to the same, either by
the foot-front or in such other manner and in such pro-
portions and amounts as to the burgess and town council
may seem just and equitable......"   It has frequently

been said that the foot-front rule is not a principle of taxation but merely a convenient method reasonably certain to produce a substantially fair result in built-up sections, adopted and sustained as a practical adjustment of proportional benefits; the decisions were considered by Judge PORTER in Scranton v. Koehler, 14 Pa. Superior Ct. 1, at page 20, etc. (see same case in 200 Pa. 126), and by President Judge RICE in Harrisburg v. McPherran, 14 Pa. Superior Ct. 473 at 488, etc. As the method furnishes only a working rule for the practical adjustment of proportional benefits conferred upon property by a local improvement, the cost of which shall be collected out of the property, it is obvious that we cannot determine whether the rule was misapplied in this case without considering the evidence which we do not have. If the assessment was too large because of misapplication of the rule, an adjustment would have been proper under Witman v. Reading, 169 Pa. 375, 392, and Park Avenue Sewers, 169 Pa. 433. We must assume that there was sufficient evidence to justify the conclusion of the referee that appellant was entitled only to a deduction of twenty-five cents per foot-front upon the whole case.

We cannot say that the part of the ordinance providing for allowances on corner lots, etc., quoted renders the ordinance invalid. The presumption is in favor of validity and it had been held that article I, section 9, of the Constitution providing that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax" does not apply to assessments for the cost of such local improvements; the decisions are collected in Judge SIMONTON'S opinion in Harrisburg v. McPherran, 14 Pa. Superior Ct. 473 at 482, etc. In their brief counsel for appellant say, "It may be admitted that as to corner lots where the sewers extend along both sides, an assessment on both is liable to be excessive; and so also where there are sewers along both ends. And the provisions of the ordinance

may probably have been intended to try and limit this. .... .|...The amount which was not put upon the corner or double-end lots had to be borne by others increasing their assessments and thus operating to their disadvantage. And who shall say what is the proper allowance for lots which are expected because of the possibility of a sewer on the short side being sometime built? The uncertain and difficult rule which was so adopted by the ordinance we submit was invalid......" It is not necessarily either uncertain or difficult; that may depend upon the general sewerage plan adopted by the borough of which section "S" of the second district is only part, or on other considerations of which the record does not inform us. But it is a question of fact whether an assessment can be sustained by the foot-front rule: McKeesport v. Soles, 165 Pa. 628, and 178 Pa. 363, and that fact has been determined against appellant. Without the evidence we cannot determine that the rule prescribed in the ordinance will not furnish such substantially fair and equal apportionment as the law of Pennsylvania requires. "It is in the application of the rule its legality in each case is to be determined": Keith v. Phila., 126 Pa. 575 at 581.

2. Joining three lots in one assessment is not necessarily harmful. In this case it saved defendant costs incident to having three claims filed against his property instead of one. While the ordinance describes the land apparently as three separate lots, each with a frontage of 116 feet with an assessment of $266.80 against each lot, the claim filed states the amount as $800.40, and describes the property as "lot No. 1A, 2A, 3A......and is situate......being 348 feet in width in front......" No question was made of this in the affidavit of defense; there is no suggestion that the lot is not in fact a single lot as described in the claim: Borough v. McCoach, 52 Pa. Superior Ct. 527, is directly against appellant.

3. The modification of the contract has not been shown to be wrong. After the work had begun the borough

council by supplemental agreement with the contractor agreed to use sewer pipes of less diameter in certain streets than originally proposed and reduced the contractor's compensation accordingly.   The borough engineer also changed the sewer level, as has been stated and in the language of the referee "also in certain minor matters [made changes] as set forth in his final estimate and report which estimate and report was approved by the council."   There is no suggestion in the argument that these changes were induced by fraudulent or other improper conduct.   The ordinance authorized the borough engineer to make the changes he ordered and they were approved by the borough council.

4. The contract was substantially performed.   The referee found "The contract was performed in accordance with its terms and the terms of the ordinance as modified by the borough council and by the borough engineer, whose modifications were approved by the borough council."   In affirming numerous requests for findings of fact stating the same result in various ways, he also found that the sewer had been substantially constructed in accordance with the contract and its supplement, and had been accepted and used by the borough and by the appellant for years.   Without any evidence to show he was wrong, we conclude he was right.   The obligation to pay for accepted substantial performance is settled: Pepper v. Phila., 114 Pa. 96; Filbert v. Phila. 181 Pa. 530; Pressy v. McCornack, 235 Pa. 443, 447.

5. We cannot agree with appellant's contention that there was failure to comply with the Act of June 4, 1901, section 10, P. L. 367 (amended 1909, P. L. 194); and that in consequence the lien was lost.   Section 10 provides: "Upon each tax or municipal claim a writ of scire facias, *in the form hereinafter* set forth, must issue within five years from its filing, and verdict must be recovered or judgment entered on the scire facias within five years after it is issued.   Final judgment must be entered on the verdict within five years after its recov-

ery.    After judgment is entered, it must be revived by
writ of scire facias to revive the judgment; or by judg-
ment thereon within each recurring period of five years.
If a claim be not filed within the time aforesaid, or if it
be not prosecuted in the manner and at the times afore-
said; it shall be wholly lost: Provided, however, If a
verdict be recovered before a jury after trial or judg-
ment be entered on such verdict, the lien thereof shall
continue for five years from such recovery or entry,
though a new trial be granted or the judgment be re-
versed on appeal." Appellant's position is that as the
sci. fa. to revive issued October 29, 1915, the act re-
quired that a "verdict must be recovered or judgment
entered on the scire facias within five years after it is
issued," but as the report of the referee was filed within
only two days of the expiration of the five-year period,
the lien was lost on October 29, 1920, because there was
then neither verdict nor judgment within the meaning of
the 10th section quoted.    In the referee's report filed
October 27, 1920, as we have stated, he said "judgment
should be entered in favor of the plaintiff and against
the defendant in the sum of $1,110.88......," and di-
rected the prothonotary so to enter judgment; such an
entry was made upon that date by the prothonotary in
the continuance docket and also upon the judgment in-
dex where under "Nature of lien" it was stated to be a
referee's report.    The cases already cited show that ap-
parently this was the practice pursued locally under
these reference statutes, for in the Torrey case the Su-
preme Court considered that the referee "entered judg-
ment against" defendant: 133 Pa. 173, 179.    Appellant
however says that since these statutes provide that ex-
ceptions may be filed to the report of the referee, as was
done here, and require that they be considered and dis-
posed of by the court, which could not be done until after
the expiration of the five years, the requirements of the
10th section of the Act of 1901 were not complied with.
It is of course settled that the Act of 1901 must be fol-

lowed strictly: Scranton v. Genet, 232 Pa. 272. But the construction of the reference statutes, the established practice thereunder, the agreement of the parties to waive a jury trial and submit to trial before the referee are also elements in the problem, and we are of opinion that in the circumstances of this case there has been adequate compliance with the 10th section. The report shows that a number of municipal claims to recover sewer assessments under the same ordinance were referred to the same referee and apparently tried together, and the referee quotes a stipulation signed by counsel for the parties agreeing that requests for findings of fact and law filed in this case shall be considered with the same effect as though separately filed in each suit, the parties agreeing that "the referee may make the findings binding upon all cases" save as differences in names, description of property, frontage, "the amount assessed in the original assessment and the revised assessment" require changes and which "findings binding upon all cases" shall include "the amount of judgment and all other like matters." We need not go into the changes made in the practice established by the Act of April 6, 1869, P. L. 725, when its provisions were extended by supplement of June 22, 1871, P. L. 1363; they are considered in Butterfield v. Lathrop, 71 Pa. 225, and Thornton v. Enterprise Insurance Co., 71 Pa. 234, 239, 240, where Justice SHARSWOOD, speaking for the court, concludes, "It is our duty to mould the course of proceedings under the special acts providing for the reference of civil cases, so as most nearly to conform to the common law, and to be regulated by principles and rules most familiar to all." While immaterial in this discussion, it may be that pursuant thereto the practice arose by which referees direct judgment to be entered as was done in this case. Nor is it necessary now to consider the practice established under the General Reference Act of 1874, P. L. 166, and its supplements.

These parties waived a jury trial and agreed upon a mode of trial under a statute providing that "The trial by the referee shall be conducted in the same manner as a trial by the court with a jury......" (1869 P. L. 726; Naugle v. Nescopeck Twp., 225 Pa. 68) subject to the right of the parties to have the court pass upon exceptions as stated in the supplementary Act of 1871, P. L. 1363. We have referred to the apparently established practice under these reference statutes and to the stipulation authorizing the referee to state "the amount of the judgment"; it has been held that in such references "the finding of facts is equivalent to a special verdict......": Butterfield v. Lathrop, 71 Pa. 225; Marr v. Marr, 103 Pa. 463, 468. In selecting this mode of trial the parties must be held to have agreed that it be treated as appropriate and adequate to try the primary issue presented, and in the words of Justice STEWART in speaking for the Supreme Court about the 10th section of the Act of 1901 in Scranton v. Genet, that issue was why appellant's "property should not be under judicial subjection to a municipal claim": 232 Pa. at 277; and appellant ought not now be heard to question its adequacy for any cause urged upon us.

6. The amendment of the claim was proper. The petition to amend set forth "by mistake the details of the kind and character of said work were not minutely set forth" and an amendment was duly allowed adding to the claim as originally filed certain details of the kind and character of the work done. The objections were two-fold: (a) that there was no lien to amend; (b) that more than six months had elapsed since the work was done in front of claimant's property. As we have already shown the claim was not invalid. The second objection is also without merit. Section 35 of the Act of June 4, 1901, P. L. 364, provides: "Any claim, petition, answer, replication, scire facias, affidavit of defense, or other paper filed of record, may be amended from time to time......by leave of the court upon pe-

484 DUNMORE BOROUGH *v.* CONRAD, Appellant.

Opinion of the Court—Dissenting Opinion.  [76 Pa. Superior Ct.

tition for that purpose......setting forth the amendment desired, that the amendments therein contained are true in fact, and that by mistake they were omitted. ......Such amendments shall be of right, saving intervening rights......" The amendment was within the provisions of the act: New Castle v. Berger's Heirs, 74 Pa. Superior Ct. 548.  The assignments of error are overruled and the judgment is affirmed.

DISSENTING OPINION BY PORTER, J.:

The Borough of Dunmore, in pursuance of an ordinance duly adopted, undertook the construction of "a system of public sewers, with the necessary branches, extensions, house connections, etc.,......, to be constructed and laid along and in certain streets in 'Section S' of the second sewer district......in accordance with the plans,......the said sewers to be constructed and laid through and along the said routes hereinafter described." The ordinance then designated the streets in which the sewers and branches were to be laid.  It provided for the construction of sewers in at least ten different streets; some of the sewers being twenty-four inches in diameter, others fifteen inches and the branch sewers in some of the streets being of smaller dimensions.  This was not the construction of one sewer through a number of streets bearing different names, but it was the construction of two main sewers, connecting with the trunk sewer in Drinker Street, each of said main sewers having lateral sewers and branches therewith connected. The ordinance provided that: "For the purpose of paying for the cost and expenses of the construction of the said sewers, branches, house connections, etc., ......there is hereby appropriated the sum of $33,-759.40, or so much thereof as may be necessary, which sum shall be derived from assessment on the properties fronting, adjoining, and abutting on and along the line of the said sewers, according to the foot-front rule; provided, that on all corner lots more than

eighty feet in depth, where the sewer passes on both sides, or where a sewer has previously been constructed on the short side or will hereafter be constructed on the short side, an allowance of two-thirds of the length of the long side shall be made; and on all lots where the sewers pass at both ends an allowance of one-half of one end shall be made, and on all lots less than seventy feet in depth, where the sewer passes along the long side only, an allowance of one-half of the length of the lot shall be made, and on all lots where the sewer passes at both ends and on one side, an allowance of the side and one-half of the shortest end shall be made, which allowances are deemed just and equitable by the council." The borough, in pursuance of this ordinance, entered into a contract for the construction of the entire system of main and branch sewers for the single consideration of $27,649, which sum was to a small amount reduced, because of work omitted, with the consent of the borough authorities, during the execution of the work. When the work was completed the borough authorities proceeded to assess the cost of the construction of the entire system of sewers upon the properties abutting upon the line of any one of the several sewers, the said assessment purporting to be made according to the foot-front rule but, as stated in the claim filed in this case, "with certain allowances for corner, triangular and irregular shaped lots."

Municipalities cannot subject property to a local tax except by the lawful exercise of their powers. If the law prescribes the manner in which the corporation or its officers must act they must follow the requirements of the law under which they propose to act: Fell v. Phila., 81 Pa. 58. If it be assumed that the cost of the construction of this entire system of sewers, with its mains and branches, could lawfully be imposed as a tax by an equal assessment according to the foot-front rule upon the properties which had a frontage upon any one of the sewers or branches, then the rule should have been consistently applied. It has been held in many

cases that there must, in the public interest, be a general rule, and it must be certain and uniform. · When the municipal authorities proceed to make an assessment according to the foot-front rule they are not clothed with discretion to exempt any property, liable under the law to assessment, or to apply to that particular property a variation of the rule, upon what they may suppose to be equitable considerations.   Under the manner of assessment provided for in this ordinance a corner lot more than eighty feet in depth, where a sewer had previously been constructed on the short side, was entitled to an allowance of two-thirds of the length of the long side, a lot less than seventy feet in depth was entitled to an allowance of only one-half of the length of the lot, but a lot between seventy and eighty feet in depth was not entitled to any allowance whatever.   If the sewer passed not only along the side of the lot but along each of the ends, the whole side and one-half of the shorter end of the lot was omitted in computing the frontage. The assessment which the administrative officers of the borough were by the ordinance required to make, was not, in my opinion, an assessment authorized by law. When it came to applying this irregular mode of assessment the borough authorities proceeded upon the theory that they were invested with a wide discretion in applying the foot-front rule of assessment and in the assessment, as it declared upon the face of the claim filed, they made "certain allowances for corner, triangular and irregular shaped lots."   The fact that property fronting upon an improvement consists, in part, of triangular and irregular shaped lots may be a reason for causing the municipal authorities to hesitate before attempting to apply the foot-front rule of assessment, instead of resorting to an assessment of benefits by viewers, but when they have determined to apply the foot-front rule the property must be assessed according to its frontage, without regard to equitable considerations: Harrisburg

v. McCormick, 129 Pa. 213; Michener v. Phila., 118 Pa.
535.

The borough took the aggregate cost of all the sewers,
main and branch, in the system, and divided this aggre-
gate sum by the aggregate frontage of the abutting lots,
computing the frontage in the irregular manner above
indicated, to establish a rate of cost and then assessed
this rate so ascertained, against each lot in accordance
with its frontage.   By this method the properties in
front of which the smaller sewers are laid, including the
property of this appellant, are assessed with more than
the cost of those sewers.   They thus have to pay the cost
of other sewers, through which their properties are not
drained and from which they derive no benefit.   The
property of the appellant ought not to be assessed for
the cost of any part of the sewer from which it derives
no benefit.   The measure of assessment is the amount
of benefits, and it is limited to the cost of the improve-
ment.   If the cost is only one dollar per foot, that is all
that can be assessed on the property, though the benefit
may be equal to two dollars per foot.   Some of the
sewers in this system may have involved very expensive
construction, through solid rock or other unusual ob-
stacles.   The argument in favor of assessing the cost of
the entire system upon all the properties abutting upon
any sewer in the system, according to the foot-front rule,
is open to the serious objection that it presents no princi-
ple upon which the limitation of such charges can be
fixed.   With regard to such an attempt to assess the ag-
gregate cost of all the main and local sewers in a dis-
trict, according to the foot-front rule, upon the properties
abutting on the different sewers it was said in Whitman
v. Reading City, 169 Pa. 391: "The main sewer into
which any particular branch shall empty is not located
or its size determined by the needs or convenience of that
branch alone or even chiefly, but by the requirements of
the whole district.   This includes or may include many
branches, of different situations and very various cost.

This one branch may be through ordinary ground having a natural grade in the right direction, while another may have to be built up through low land with the wrong slope, or cut through rock at greatly increased expense. A ratio of cost made up of the average of these, is not an accurate measure of any one of them." It is not pretended that there was in this case any evidence whatever as to the cost of the branch sewer for the construction of which the property of this appellant was legally liable to contribute. It clearly appears, from the terms of the ordinance and the claim filed, that the assessment was for the cost of all the sewers in the district. These considerations constrain me to dissent from the decision of the court in this appeal.