# O'Malley *v.* Borough of Dickson City, Appellant.

*Contracts—Boroughs—Professional services — Evidence—Sufficiency.*

In an action by an attorney against a borough for compensation for services rendered in connection with a loan obtained from a bank, a judgment for the plaintiff will be affirmed, where it appeared that the defendant's agent agreed with the bank to pay for the plaintiff's services, and that this arrangement was approved by the borough solicitor and ratified by the finance committee of the borough council and the council, and the only matter in dispute was the amount of the compensation.

544 O'MALLEY v. DICKSON CITY BORO., Appellant.

Statement of Facts—Opinion of the Court. [80 Pa. Superior Ct.

Argued March 6, 1923. Appeal, No. 2, March T., 1923, by defendant, from judgment of C. P. Lackawanna Co., Oct. T., 1920, No. 606, on verdict for plaintiff in the case of James J. O'Malley v. Borough of Dickson City. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for counsel's fees. Before EDWARDS, P. J.

The facts are stated in the opinion of the Superior Court.

The case was referred to R. W. Archbald, Esq., as referee, who found in favor of the plaintiff in the sum of $150.

On exceptions to the referee's report, the court dismissed the exceptions and entered judgment in favor of the plaintiff. Defendant appealed.

*Errors assigned* were in dismissing exceptions and the judgment of the court.

*Reese H. Harris,* of *Knapp, O'Malley, Hill & Harris,* and with him *Stanley M. Evans,* for appellant.

*D. J. Reedy,* for appellee.

OPINION BY LINN, J., April 16, 1923:

The borough appeals from judgment on plaintiff's claim for professional services. The case was referred (Act of April 6, 1869, P. L. 725) and the referee's report confirmed.

Appellant concedes the referee's finding of facts has the effect of a special verdict (Dunmore v. Conrad, 76 Pa. Superior Ct. 473, 482) but contends there is not sufficient evidence binding the borough to pay. No question is raised here concerning the amount of the claim, or that the services were rendered, or of plaintiff's right to sue.

Early in 1919, during some confusion in the affairs of the borough and lack of harmony amongst its officers

(Com. ex rel. v. Reid, 265 Pa. 328), it became necessary to borrow $15,000 to satisfy current obligations (to pay policemen, for lighting, etc.). An agent of the borough applied to the Olyphant State Bank for a loan of $15,-000 to the borough. The bank, with some knowledge of the confusion in the borough, informed him it would lend the money if the borough agreed to pay plaintiff for his legal services in connection with the loan. This was reported to the finance committee of the borough council at a regular meeting. This committee was composed of a majority of the members of the council, and held its meetings in the council chamber immediately preceding the meetings of the council. The finance committee accepted the terms imposed by the bank. At the meeting of council, following the meeting of the finance committee, the council instructed the borough solicitor, then present and who had been present at the meeting of the finance committee, to prepare the necessary papers. The minute book of the council shows only a brief resolution "authorizing and empowering the borrowing of $15,000 from the Olyphant Bank of Olyphant, Pa.," apparently adopted by a vote of five to three.

The referee found (and these findings are not excepted to) "the borough's solicitor, who was present at the meeting of the council when the resolution referred to was passed, was directed by the council to confer with the plaintiff with regard to the loan and to draw up the necessary papers to secure it. 9. Following this, Mr. Rymer, as solicitor for the borough, submitted to the plaintiff the papers he had drawn up, and secured their approval and the loan to the borough was then made." It therefore appears that the borough solicitor assented to the employment of plaintiff as additional counsel, in compliance with section 12, article VI, chapter 7 of the General Borough Act of May 14, 1915, P. L. 312, 403. Later, when plaintiff's bill for $150 was presented to the finance committee for approval, there was a dispute about the sum claimed, although the agreement to pay

for the services was conceded. As to this, the borough solicitor testified, "I am telling you how Mr. O'Malley's bill came in to the secretary, [of the council] and then to the finance committee—this finance committee would always meet fifteen minutes before the council meeting, and I usually sat in with them, and all the bills would be taken up, and the different men that had the attention of the chairman of the committee would say, 'this is right' and 'this is right,' and O'Malley's bill came up, and Jim Reid turned to me and said 'this is an outrageous bill,' he said, 'we agreed, and told Tom [the agent of the borough in applying to the bank for the loan] we would take care of the Olyphant bank solicitor, but we don't want to pay any bill like this; if you see him tell him we will pay him $50' and instead of approving the bill, they just pigeon-holed it.

"Q. That action was simply the informal individual action of the councilmen—Mr. Reid's statement for instance? A. Well, except this Mr. Harris, [cross-examining] there was a majority of the councilmen on the finance committee that had the initial approval of the bills, because when bills were reported in regular session, you see our council was five and four, and whatever the five wanted, went through; and I think at every meeting, on every bill no matter if it was a legitimate bill or for two cents the four would vote 'no, we won't pay any bills' they voted 'no' on everything, and these five voted and put it through." Subsequently the finance committee authorized the borough solicitor "to see O'Malley and get him to reduce the bill and state that they would be willing to pay him $50, and that was their limit." These efforts failed and this suit was brought.

Only two findings of fact were excepted to and are assigned for error: 1, that an agent of the borough on its behalf appeared at the bank and was informed the bank would make the desired loan if the fees for its solicitor "for making the examination and approving the loan"

were paid by the borough; and 2, that at the direction of
the council, the borough solicitor saw the plaintiff "and
tried to get him to reduce his bill to $50, which amount
the council were willing to pay." Neither exception is
material in view of what has been stated. There is evi-
dence that the agent (referred to as Tom, in above quo-
tation) was instructed by the finance committee to ap-
ply to the bank on behalf of the borough, or that his
action in so applying, was ratified by the finance com-
mittee. It is immaterial whether he was first sent to
the bank by the finance committee on behalf of the
borough, or whether he went there on the borough's be-
half and the borough subsequently received the proposal;
in either case there was ample power in the finance com-
mittee to receive the proposal, or, later, to ratify what
the agent did in obtaining it for the borough.

There is evidence to support the general conclusion of
the referee; and we may not inquire further, as the ques-
tion is not whether we should have found the same way.
As the record shows the proposal of the bank was ac-
cepted, and that the borough likewise accepted the bene-
fit of plaintiff's services, the liability to pay follows:
Jeffreys v. Versailles Borough, 55 Pa. Superior Ct. 85.

Judgment affirmed.