373 A.2d 1088
**COMMONWEALTH of Pennsylvania**
v.
**Barry Lee LESHER, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1977.

Decided June 3, 1977.

142

Bernard V. O'Hare, George A. Heitczman, Bethlehem, for appellant.

Charles H. Spaziani, Dist. Atty., John E. Gallagher, First Asst. Dist. Atty., Robert A. Freedberg, Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On February 27, 1975, the appellant, Barry Lesher, was convicted by a jury of voluntary manslaughter for the killing of one Wayne Eisenhart. Post-verdict motions were denied and a sentence of four to eight years imprisonment was imposed. This direct appeal followed. Lesher advances several assignments of error in support of reversal of the judgment and the grant of a new trial. A new trial is required because the trial court's charge to the jury failed to clearly assign to the Commonwealth the burden of proving beyond a reasonable doubt Lesher did not act in self-defense.[1]

The record establishes that Eisenhart's death was the result of a gunshot wound inflicted during an incident at Lesher's residence, 637–B Ramblewood Lane, Freemansburg, Pennsylvania, in the early morning hours of October 14, 1974. There is, however, a sharp conflict between the testimony presented by the Commonwealth and that presented by the defense as to the circumstances surrounding Eisenhart's death.

The Commonwealth's evidence tended to prove the following. On the night of October 13, 1974, Eisenhart was in the company of William Hillegas and Michael Wasser at a Freemansburg tavern, where they were shooting pool and drinking beer for several hours. At approximately 1:30 a. m. on October 14, 1974, the trio left the tavern and, at Eisenhart's suggestion, drove to Lesher's apartment. Upon their arrival, Eisenhart and Hillegas,

1. Lesher also asserts 1) the trial court failed to adequately instruct the jury on the presumption of innocence, 2) the trial court failed to adequately instruct the jury on the law applicable to Lesher's theory of accidental killing, and 3) the trial court erred in denying a motion for mistrial when the Assistant District Attorney elicited allegedly improper testimony that Lesher had been suspected of prior criminal activity. We need not and do not reach these assignments of error.

each with several bottles of beer, went up to Lesher's door, followed by Wasser. Eisenhart knocked on the door; when Lesher's wife answered, he told her they had come to "party" with Lesher and he handed her "a beer or two." Mrs. Lesher informed them Lesher was asleep, but she would awaken him. She told them to wait and closed the door, leaving them outside. A few minutes later she returned and again instructed them to wait and closed the door. When the door opened a third time, Lesher was coming down the stairs with a pistol in his hand. Pointing the weapon, Lesher told the three to "Get the f - - - out of here." Hillegas then tugged on Eisenhart's arm and said something to the effect of "let's get out of here." A shot was then heard. Hillegas testified that he heard the shot as he turned to leave and that he threw a beer bottle at the doorway before running for cover. Wasser testified he heard the shot and saw Eisenhart "blown off the porch." He then ran for his truck. Hillegas and Wasser attempted to retrieve Eisenhart's body, but abandoned their efforts after they saw Lesher standing at the apartment window with the pistol. They drove to a friend's house and had him notify the police that a shooting had occurred at Ramblewood Lane.

Lesher was arrested on October 23, 1974, in Norristown, Pennsylvania by a team of state and local police officers. At approximately 1:30 p. m. a group of three or four officers knocked at the front door of 118 Hamilton Street and announced they had a search warrant and an arrest warrant for Lesher. At that same time, Lesher was apprehended by another group of three officers stationed at the rear of the Hamilton Street address. Lesher was running from the back of the house in his stocking feet.

Eisenhart's body was not recovered until November 5, 1974, when Lesher directed the police to a shallow grave in a remote and heavily-wooded area of Williams Town-

ship, Northampton County. The body had been covered with lime and buried under approximately two feet of dirt.

Lesher's version of the incident was substantially different, although he admitted shooting Eisenhart. Lesher's testimony tended to show the following. On October 13, 1974, Lesher went to bed at approximately 10:00 p. m. Some time later, he was awakened by loud yelling and banging at the front door. Lesher looked out his bedroom window and saw Eisenhart, Hillegas and Wasser outside his door. He recognized these three as members of the Pagans Motorcycle Club, archrivals of the Warlocks, the motorcycle club to which he belonged. (Lesher also testified Eisenhart and Hillegas had confronted him at a hill-climb approximately three weeks prior to October 13, 1974, and stated they would have shot him if they had seen him "a couple days earlier.") Lesher further observed Hillegas smash a beer bottle by throwing it against the building. He told his wife to go downstairs and tell their house guest not to open the door for the three Pagans. Lesher then obtained a loaded pistol from his nightstand and proceeded downstairs. As he descended the stairs, Lesher observed his wife holding the open door and Eisenhart standing at the threshold. Eisenhart pushed the door completely open and said to Lesher, "Come down here or we'll come in and get you." Lesher responded, "Get the f - - - out of here." As Eisenhart stepped across the threshold, Lesher struck him with the pistol and the weapon accidentally discharged, knocking Eisenhart backwards through the doorway and off the porch.

Lesher further testified that fearing retaliation by the Pagans, he removed Eisenhart's body from in front of the apartment and concealed it in the woods near Springtown, Pennsylvania. He also instructed his wife to leave their apartment and take their children to a friend's house in Quakertown. Lesher and his family later went

to Norristown, where he was subsequently arrested. Several days after the shooting, Lesher cut his hair, shaved off his beard and obtained a pair of sunglasses to disguise himself. He then returned to where he left Eisenhart's body and removed it to the spot where it was eventually recovered.

Lesher challenges the adequacy of the trial court's instructions to the jury regarding the burden of proof on the issue of self-defense. Specifically, he asserts the trial court's charge on this point was defective because it failed to clearly assign to the Commonwealth the burden of proving beyond a reasonable doubt that Lesher did not act in self-defense.[2] In support of his position, Lesher cites *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974), [hereinafter *Rose*] and *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975), [hereinafter *Cropper*].

In *Rose* we reversed a murder conviction on the ground the trial court erred in charging the jury the defendant had the burden of proving intoxication by a preponderance of the evidence. In so doing we departed from our prior pronouncements and announced a new rule in accord with the modern trend of requiring that, when evidence from whatever source exists to raise an

2. This issue has been properly preserved for appellate review since Lesher requested the following points for charge which were refused by the trial court:

"11. The defendant has no burden of proof with respect to the defense of self-defense. *Commonwealth v. Rose,* [457 Pa. 380] 321 A.2d 880 (1974).

"12. Unless the evidence produced by the Commonwealth is sufficient to persuade you beyond a reasonable doubt that Barry Lee Lesher did not act in self-defense, you must find him not guilty. *Commonwealth v. Rose,* [457 Pa. 380] 321 A.2d 880 (1974).

"13. If you have a reasonable doubt as to whether or not Barry Lee Lesher acted in self-defense, you must find him not guilty. *Commonwealth v. Rose,* [457 Pa. 380] 321 A.2d 880 (1974)."

See *Commonwealth v. Palmer,* 467 Pa. 476, 359 A.2d 375 (1976); *Commonwealth v. Moyer,* 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975).

issue relating to an affirmative defense, the jury be told they must acquit if they have a reasonable doubt of the issue thus raised. The Court in *Rose* explicitly grounded its decision on the Commonwealth's "unshifting burden to prove beyond a reasonable doubt all elements of the crime." *Rose*, supra, 457 Pa. at 389, 321 A.2d at 884.

Subsequent to the trial and denial of post-verdict motions in the instant case, *Cropper* was decided, wherein a majority of this Court reached the same conclusion with respect to self-defense. Rather than utilizing the *Rose* rationale, however, *Cropper* was grounded on an analysis of the legislature's intent in enacting the new Crimes Code, 18 Pa.C.S.A. § 101 et seq., which became effective June 6, 1973. The Court reasoned that since the section of the Crimes Code relating to self-defense, 18 Pa.C.S.A. § 505, contains no indication that a defendant bears the burden of proving that defense, while other sections of the Code specifically require a defendant to prove certain defenses to various crimes by a preponderance of the evidence, "it must be assumed that the legislature intended not to impose on defendants the burden of proving that they acted in self-defense. Thus [the Court concluded] when there is evidence at trial from whatever source that a killing may have been done in self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Cropper*, supra, 463 Pa. at 537–38, 345 A.2d at 649. (Footnote omitted.) See also Toll, "A Practitioner's Guide To Defenses Under The New Pennsylvania Crimes Code," 12 *Duq.L.Rev.* 849 (1974).

 Lesher argues the trial court's instructions never established that the burden of proof on the question of self-defense rested on the Commonwealth and thus, he asserts, the charge was contrary to *Cropper* and *Rose*.[3]

---

**3.** Lesher's trial took place after our decision in *Rose* and at the time Lesher requested the aforementioned points for charge, he cited *Rose* as authority for the principles of law stated therein.

148 

It is well-established, however, that in charging the jury the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975). Also, in evaluating a challenge to the correctness of instructions to the jury, the charge must be read and considered in its entirety and it is the general effect of the charge that controls. *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974); *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974).

██ The record here indicates the trial court in its charge impressed upon the jury that Lesher had no burden of proof whatsoever, but rather the Commonwealth was responsible for establishing every element necessary for a finding of guilt. For example, the trial court stated in the beginning of its charge:

"It is not the defendant's burden to prove that he is not guilty. Instead, as I will indicate to you throughout the charge, it is the commonwealth that always has the burden of proving each and every element of the crime that is charged and that the defendant is guilty of that crime beyond a reasonable doubt. The person

As such, Lesher raises a question that the Court avoided in *Cropper*, namely, whether *Rose* in effect overruled *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A.2d 108 (1970). Of course, *Cropper* rendered this question moot with respect to cases such as the instant one where the Crimes Code controls. Be that as it may, even though *Cropper* was decided "[w]holly apart from our decision in *Rose*," there can now be little doubt *Rose* would have compelled the same conclusion. See and compare *Cropper; Rose.* See also *Commonwealth v. Moyer*, supra; *Commonwealth v. Williams*, supra; *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). Nor does the Commonwealth dispute the applicability of the *Cropper* standard instantly. Accordingly, Lesher's claim of error is evaluated in light of *Cropper*.

It should also be pointed out that we need not and do not address ourselves to any question of retroactivity in order to decide the instant case since the issue raised by Lesher can be resolved on the ground of state law applicable at the time the issue was raised.

accused of a crime is not required to present evidence or to prove anything in his own defense. If the commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty."

The court also discussed the relationship between the Commonwealth's burden of proof and the testimony presented in the instant case:

"Now, how do you consider this testimony with respect to self-defense, ladies and gentlemen? As I have already indicated, the only burden of proof in a case such as this, in any criminal case, is upon the commonwealth to prove that one of the offenses that I have already defined to you has been committed and to prove each and every element of that offense beyond a reasonable doubt.

"Testimony such as this, relating to accident or with respect to self-defense, is brought into this case and may, by itself or with any of the other evidence in the case, be sufficient to create in your minds a reasonable doubt. And, if so, you should, of course, acquit the defendant. The defendant does not have the burden of proving anything in his own defense, as we said at the outset of our charge. Now, *the commonwealth does not have to disprove self-defense—that is, they do not have to prove a negative*—but evidence of self-defense or evidence of accident, as I said, either standing alone or with all the other evidence, may be sufficient in your minds to create a reasonable doubt which might not have existed without the evidence of accident or self-defense." (Emphasis added.)

Were it not for the statement that the Commonwealth did not have to disprove self-defense, it would not be difficult to conclude the charge here, read as a whole, was substantially equivalent to the pertinent statement of the

law in *Cropper*. Up to that point, the charge clearly informed the jury 1) Lesher had no burden whatsoever of proving his innocence, 2) evidence of self-defense, standing alone or with other evidence, could raise a reasonable doubt as to Lesher's guilt, and 3) the Commonwealth had the burden of proving beyond a reasonable doubt every element essential to a finding of guilt. Moreover, reading the charge up to that point as a whole, we might well have concluded that these instructions fairly embraced the question of self-defense and that thus, the charge was not inadequate regarding the burden of proof of self-defense. See *Woods v. State*, 319 N.E.2d 688 (Ind. App.1974); *State v. Tinson*, 491 S.W.2d 279 (Mo.1973); but see *State v. Carter*, 227 La. 820, 80 So.2d 420 (1955).

However, the trial court here did not confine itself to general instructions as to the Commonwealth's burden of proof, but went on to state specifically that the Commonwealth "does not have to disprove self-defense—that is, they do not have to prove a negative." This latter statement was the only remark regarding the burden of proof directed specifically at self-defense; all of the court's other instructions relating to the Commonwealth's burden of proof were couched in general terms and did not focus upon any single aspect of the case. Furthermore, even though the trial court instructed the jury it was the Commonwealth's burden to prove beyond a reasonable doubt every element of the crime charged, at no point in the charge was the jury explicitly informed a determination that Lesher was not acting in self-defense was essential to a finding of guilt. Under these circumstances, when the trial court made the statement that the Commonwealth did to have to disprove self-defense, the jurors could have been confused and led to infer that the question of self-defense was not an essential issue as to which the Commonwealth had the burden of persuasion. We cannot assume the jury applied the court's general instructions to its deliberations with respect to self-de-

fense, since the court gave a seemingly contradictory instruction specifically directed at that issue. We are also not persuaded this shortcoming was corrected in another part of the trial court's charge. As noted above, the jury was instructed that evidence of self-defense could create a reasonable doubt as to Lesher's guilt. And while the logical implication of this instruction might be that a determination Lesher was not acting in self-defense was necessary for conviction, see Annot. 43 A.L.R. 3d 221, 224 (1972), the fact remains there was no direct statement covering this point of law other than the instruction that the Commonwealth did not have to disprove self-defense. We are not convinced the potential confusion attendant upon this latter direct statement was eliminated or even clarified by the implication of other portions of the charge. Compare *Commonwealth v. Rodgers*, supra; *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972). Since the jury might have returned a guilty verdict in the instant case even though they were not convinced beyond a reasonable doubt Lesher did not act in self-defense, we find the trial court's charge as given in the instant case contained reversible error. See *United States v. Booz*, 451 F.2d 719 (3d Cir. 1971); *Commonwealth v. Holloway*, 212 Pa.Super. 250, 242 A.2d 918 (1968).

Accordingly, the judgment of sentence is reversed and a new trial is ordered.

JONES, former C. J., did not participate in the consideration or decision of this case.

ROBERTS and NIX, JJ., concur in the result.