399 A.2d 767
**COMMONWEALTH of Pennsylvania**

v.

**Daniel J. HALL, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided March 16, 1979.

Lester G. Nauhaus, Assistant Public Defender, Chief, Appeals Division, and with him, Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

Appellant was found guilty, after a jury trial, on robbery, assault and conspiracy charges. After the denial of post-trial motions, and sentencing, he appeals to this Court, raising several claims of error.

First, appellant contends that he was entitled to an order declaring a mistrial after an officer, in testifying about the comparison of a fingerprint found at the crime scene with the appellant's fingerprints, made reference to the source of the appellant's fingerprints ". . . on the BCI Rap Sheet". It is argued that such a statement imparted the inference to the jury that appellant had a record of prior criminal activity. Of course, if a comment by a witness creates such an inference for the jurors, reversal is usually required. See *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). Not all references suggestive of criminal activity are prejudicial and require reversal, however. In *Allen,* the Supreme Court noted that a mere "passing reference" to an identifying matter (photographs in *Allen*) from which a reasonable inference of prior criminal activity cannot properly be drawn will not create the possible prejudice mandating reversal, nor will it be mandated where there is an explanation of the police possession of the identifying matter unrelated to any inference of prior criminal activity. *Allen,* 448 Pa. at 181, 292 A.2d at 375. Several cases exemplify those principles. See *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71 (1975); *Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974); *Commonwealth v. Griffin,* 236 Pa.Super. 344, 344 A.2d 517 (1975).

In many cases, the reference in issue is to a so-called "mug shot" (See *Commonwealth v. Smith,* 454 Pa. 515, 314 A.2d 224 (1973)), a term which has attained a widespread and well-known meaning in our culture for the type of photograph which law enforcement agencies maintain of convicted felons. The term "BCI Rap Sheet" does not, however, convey the same type of popular meaning. In fact, its meaning was most likely a complete puzzle to the jurors and does not impart a clear inference of prior criminal conduct.

Thus, the comment itself does not seem prejudicial. Moreover, a later witness, a fingerprint expert, testified that the appellant's fingerprints, as used for the comparison with the print located at the crime scene, were first taken on the day of his arrest for the crimes charged in this case. Thus, the record shows an explanation to the jurors that the police possession of the fingerprints of appellant first occurred on the date of his arrest. This effectively rebutted any possible inference of prior police possession due to prior criminal activities by the appellant.[1] See *Commonwealth v. McFadden,* 464 Pa. 265, 346 A.2d 550 (1975). Last, we note that the lower court cautioned the jury to attach no significance to the comment in issue in their deliberations. It was not error in these circumstances for the lower court to deny the motion for mistrial.

The appellant next argues that the lower court should have granted his request for mistrial when a police officer testified concerning appellant's silence after his arrest. The comment by the witness was in response to a question from defense counsel, on recross examination of the witness:

DEFENSE COUNSEL: "You don't question someone after you arrest them?

OFFICER: "I tried to question Mr. Hall and he would not cooperate at all. He denied . . ."

Defense counsel moved immediately for a mistrial, which was denied by the lower court.

While in the usual case it is reversible error to admit evidence that an accused stood silent at the time of his arrest (See *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976)), that concept is inapplicable in the instant circumstances for several reasons. First, the response appears to violate the prohibition mainly because it is taken out of context. The question was preceded by the appellant's testimony in his own defense. Essentially, he offered an alibi defense. Part of his testimony concerned a description

---

1. It is interesting that the fingerprint recovered at the crime scene was exculpatory evidence as it did not match the appellant's fingerprints.

of his car and its license number, both of which he had been associated with the crime scene by other witnesses. Appellant testified, in response to his own attorney's questions, that he allegedly had a discussion with the arresting officer and that the officer gave him a different license number which police purportedly obtained for his car, and appellant, in the same conversation, provided his own license number, presumably as a cooperative gesture to the officer. On cross-examination of the appellant, he was questioned regarding his auto and its license number. On rebuttal, the Commonwealth called the arresting officer as a witness. The defense sought an offer as to his testimony, and the attorney for the Commonwealth stated that the witness would testify that appellant had no conversation with him regarding the license number of the car, and further that police were already in possession of information regarding that license number, making such a conversation even more unlikely. The officer then testified that after arresting appellant, he did not inquire as to the registration (license) number, as he already had such information when appellant was arrested. It was at the conclusion of the Commonwealth's questioning when the defense attorney asked, as his first question: "You don't question someone after you arrest them?" The defense now complains that the officer's response prejudicially indicated that appellant elected to remain silent when questioned, as was his right.

We cannot reach the conclusion sought by appellant. The question posed by defense counsel, in our view, virtually begged for the type response which evolved. The issue of what appellant told the officer at the time of arrest was first raised at trial by appellant. The Commonwealth, in rebutting the testimony of the accused as to his conversation with police at the time of his arrest, skillfully avoided any question which might prompt the response that appellant stood silent when interrogated. Defense counsel, in a probable attempt to shed a poor light upon the officer's credibility, asked a question seemingly designed to elicit an answer concerning the questioning of appellant. The officer's testi-

mony, while not perfectly responsive to the exact question posed, nevertheless could not have been unexpected in the circumstances. See and compare *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976).[2] In the instant case, the court immediately cautioned the jury to disregard the response of the officer. We see no error.

The appellant next argues that the lower court committed reversible error when it questioned the appellant, in the absence of defense counsel, concerning whether certain photos, used for identification purposes by the victims, should be shown to the jurors. The subject of these photos came up continuously throughout the trial, and a background, as to all that occurred, is necessary prior to any discussion of this issue. The following excerpt from the lower court's Opinion correctly summarizes the events of record relevant to this argument:

The defendant's motion to prohibit the prosecution from exhibiting to the jury certain police photographs, including one of the defendant, which were viewed by two of the victims in identifying the defendant, was denied when the prosecutor indicated that she did not intend to offer the photographs in evidence.

Before trial the court held a suppression hearing after which it reached the conclusion that no improper identification procedure was employed by the police in exhibiting the photographs to the robbery victims. During the trial when a detective testified that witnesses had identified the defendant after viewing the photographs, defense counsel moved to strike all testimony "concerning photographs or identification from photographs" because, he said, "all references to the photographs and the photographs being in court is leaving the jury with the impres-

2. While we need not decide the issue in the present contexts, it is possible in some circumstances that the Commonwealth might be permitted (with appropriate cautionary instructions to a jury) to disclose the silence of the accused in response to police questioning, if such evidence is in fair rebuttal to earlier material testimony of the accused concerning information or cooperation assertedly provided to police during such questioning.

sion they should be able to examine this, or there is nothing prejudicial about these photographs." The court denied the motion to strike and then received the photographs but indicated that they would not be exhibited to the jury lest the jury infer from them to the defendant's prejudice that he had a prior criminal record. The court refused to allow defense counsel to argue to the jury that the defense witnesses must have identified defendant as one of the robbers by using information which appeared upon the reverse of the photographs. This was entirely proper for there was no evidence that the witnesses ever used the information contained on the reverse side of the photographs in selecting defendant's photograph as that of one of the men who robbed them. The court indicated a willingness to allow counsel to exhibit the photographs and to argue a possible error in identification but refused to allow argument on the possible utilization by witnesses of information on the reverse side which contention was not previously advanced to the jury in the questioning. Defense counsel after first stating (T.T. p. 287) that he thought it "only reasonable if these exhibits went out" then offered the opinion that the photographs be kept completely out of [the jury's] view T.T. pp. (289–290).

After the jury was sent to deliberate, the defense counsel asked to have the photographs sent out with the jury. The court asked defense counsel if he would waive all objections if the court acceded to the request and submitted the photographs. When defense counsel declined to do so, the court refused to send out the photographs.

Sometime thereafter the jury requested the photographs. Defense counsel was summoned to the courtroom. He indicated a willingness that the jury view the photographs but stated that he wished to consult with his client. He was directed to do so and to advise his client of the danger that the jury might view them as adverse to defendant. Defense counsel reported that his client was agreeable to the jury viewing the photographs. It was

then decided to have defendant questioned and his agreement made a matter of record. When defense counsel did not promptly return to the courtroom, defendant alone was advised fully of his right not to agree to the jury's request. He was advised that the court had, notwithstanding defense counsel's request that it be done, refused to send out the photographs because they were obviously police photographs from which the jury might possibly infer prior criminal activity with consequent prejudicial effect upon defendant. When asked how he felt about it, defendant said, "Send them out." When defense counsel appeared, he was told of the jury's request and the action taken thereon.[3] He was told that if he objected to the jury viewing the photographs, contrary to the position he had been strenuously asserting and contrary to the position taken by his client, the court would have the deliverer of the evidence intercepted. When defense counsel refused to state a position, the court allowed the photographs to be viewed by the jury.

The right to counsel is not one which this Court views lightly. It is firmly established that an accused has a constitutional right to counsel during all critical stages of a criminal stages of a criminal proceeding. *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971). The accused ". . . is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967). In light of our recognition of this principle, we cannot comment favorably on the lower court's conduct in questioning the appellant in the absence of defense counsel in this case. Nevertheless, in the particular circumstances presented here, we find no basis for reversal. We reach that conclusion because the lower court offered defense counsel, repeatedly, a remedy to any possible prejudice which might have flowed from the incident, when the

3. He was also told of the Court's questioning of his client.

court offered to intercept the pictures before they were delivered to the jury. Defense counsel, while changing his position several times during trial regarding whether or not the jury should be permitted to view the pictures, took the final position (after conferring with his client but before his client was questioned alone) that the jury should be permitted to see them. The only possible prejudice to the appellant in the court's questioning of him, without counsel, but in the absence of the jury, could have been cured if it was thereafter the defense position that the jury not view the pictures. However, the defense did not take advantage of the court's offer to keep the pictures from the jury. We find no basis for reversal in these circumstances, on the argument that appellant was denied counsel.

Finally, appellant raises two issues which may be deemed frivolous. First, he contends that reversible error occurred when the lower court received into evidence a certification of automobile ownership from the Pennsylvania Department of Transportation and a computer print-out attached to that certification, showing the same information. These documents established that appellant was .the registered owner of an automobile with a license number identified by a witness to the robbery for which appellant was prosecuted. The admission of these documents is specifically permitted by statute, in Section 1224 of the Pennsylvania Motor Vehicle Code, as amended October 2, 1974. See 75 P.S. § 1224; *Commonwealth, Department of Transportation, et al. v. Kluger,* 12 Pa.Cmwlth. 460, 317 A.2d 686 (1974). We find the appellant's claim of improper admission to be without merit. We also find no arguable merit to his claim that insufficient evidence was introduced to prove beyond a reasonable doubt that he was guilty of the crimes charged. The record shows that appellant was identified positively by two victims as one of a pair of individuals who participated in the robbery of a tavern. Another witness, who saw the robbers flee, identified the gateway car that was proven to be registered to the appellant. The jury obviously credited the testimony of these prosecution witnesses, and not the

alibi defense offered by appellant. That prosecution evidence was clearly sufficient to prove the guilt of appellant, of all of the elements of the crimes for which he was convicted, beyond any reasonable doubt.

Affirmed.

CERCONE, P. J., concurs in the result.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.