424 A.2d 1345

**COMMONWEALTH of Pennsylvania**

v.

**Levi RHEM, Appellant.**

Superior Court of Pennsylvania.

Argued March 18, 1980.

Filed Nov. 21, 1980.

Reargument Denied Feb. 11, 1981.

Richard J. Conn, Philadelphia, for appellant.

Lise Rapaport, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

Appellant Levi Rhem was convicted in a jury trial of charges of possessing instruments of crime, attempted robbery, and two counts of robbery in the Court of Common Pleas, Philadelphia County. Post-trial motions were argued and denied and an aggregate sentence of six to twenty years imprisonment was imposed. This direct appeal followed.

Facts adduced at trial established the following. In the early morning hours of July 3, 1978, complainants Raymond Carter and his sister Joyce were in their home at 2024 North

20th Street in Philadelphia. Visiting with Mr. Carter at that time was Miss Gustine McKenzie, also a complainant herein. Mr. Carter was summoned by a knock to the front door where he was met by appellant and co-defendant David Benson standing on the porch. One of these individuals inquired of Mr. Carter whether he was "cool",[1] to which Carter replied "No." The visitors turned to leave but suddenly spun around brandishing guns and demanded to know where Carter's money and drugs were. Benson accompanied Carter to the upstairs bedroom while appellant proceeded to the living room and relieved Miss McKenzie of her money and a watch. He then ordered her to walk upstairs. In the second floor bedroom, Carter and Miss McKenzie sat on the bed while appellant and Benson struck them with their guns and demanded money. Appellant roused Joyce Carter from her third floor bedroom and ordered her to join the others on the second floor. At this point, the police arrived and began knocking loudly on the front door.[2] Appellant and Benson forced their captives downstairs and onto the floor and then hid their guns. The robbers answered the front door and were thereafter arrested.

Both defendants testified at trial as to their version of the events of July 3rd. Essentially, their claim was that in the late evening of July 2nd, they had purchased some poor quality drugs from Raymond Carter, and that early on July 3rd they had returned to Carter's house to demand their money back. They maintained that once inside Carter's house, a fight ensued, instigated by Carter, and that when the police arrived they tried to explain that they, defendants, had been "burned" by Carter, the complainant, in a bad drug buy.

■ Based upon the foregoing, we must reject appellant's contention that the evidence was insufficient to establish every element of the crimes beyond a reasonable doubt.

1. "Cool" is apparently street language meaning to have or sell drugs.

2. Unbeknownst to anyone in the Carter house, a neighbor, one Tina Warren, had witnessed part of the robbery and summoned the police.

*Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979). Moreover, the fact that there were a few inconsistencies and minor variations in the Commonwealth's witnesses does not render the verdict against the weight of the evidence. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976).

██ Next, appellant contends that the court committed error in eliciting evidence of appellant's silence at his arrest. However, our review of the record simply does not bear out this contention. During his cross-examination, appellant was asked, without objection, whether he told the arresting officers that he had not robbed the complainants but was merely in the house to discuss a drug buy. Appellant stated that he tried to tell the officers this fact but that they "didn't want to hear that." N.T. 4214. Shortly thereafter, the court engaged appellant in the allegedly objectionable inquiry:

> THE COURT: When you got to the district, did you tell them that you had purchased bad drugs there?
>
> THE WITNESS: They wouldn't let me say nothing.
>
> THE COURT: When you got to a hearing, there were lawyers there, were there not?
>
> [Appellant's counsel] Objection.
>
> N.T. 4222–3.

We do not agree with appellant that the foregoing constitutes a reference to appellant's silence after arrest, as construed by our cases:

> "The law is clear. It is reversible error to admit evidence of a defendant's silence at the time of his arrest. *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). The prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights. *Commonwealth v. Stafford*, supra; *Commonwealth v. Haideman*, supra; *Miranda v. Arizona*, [supra]. It is a recognition that most lay persons would view an assertion of the constitutional privilege as an admission of guilt.

*Commonwealth v. Haideman,* 449 Pa. at 371, 296 A.2d at 767, citing *Walker v. United States,* 404 F.2d 900, 903 (5th Cir. 1968)." 465 Pa. at 403, 350 A.2d at 828. (Emphasis added).

*Commonwealth v. Greco,* 465 Pa. 400, 404, 350 A.2d 826, 828 (1976); *Commonwealth v. Williams,* 252 Pa.Super. 435, 381 A.2d 1285, 1289 (1977). See also, *Commonwealth v. Brown,* 271 Pa.Super. 331, 413 A.2d 692 (1979); *Commonwealth v. Anderjack,* 271 Pa.Super. 334, 413 A.2d 693 (1979). The rationale for the rule quite clearly undercuts appellant's argument. Appellant was not attempting to "exercise his constitutional right" to remain silent. *Greco,* supra; *Commonwealth v. Singletary,* 478 Pa. 610, 387 A.2d 656 (1978). Indeed, according to his own testimony, he was making every effort to speak to the officers and present his version of the events. Moreover, we find no "admission of guilt" which a juror may glean from the quoted testimony. On the contrary, appellant was vehemently protesting his innocence but was frustrated in his endeavors. This is simply not a case of an impermissible reference to post-arrest silence in the fact of accusation or interrogation. Compare, *Commonwealth v. Myers,* 266 Pa.Super. 566, 405 A.2d 1252 (1979); *Commonwealth v. Easley,* 483 Pa. 337, 396 A.2d 1198 (1979); *Commonwealth v. Seel,* 76 Pa.Super. 481, 406 A.2d 1148 (1979); *Commonwealth v. Hall,* 264 Pa.Super. 261, 399 A.2d 767 (1979); *Commonwealth v. Flynn,* 248 Pa.Super. 62, 374 A.2d 1317 (1977). Since there was no impermissible reference to appellant's silence, there was likewise no error in failing to give a cautionary instruction.

■ Appellant next assigns as error several instances in the record wherein the court aggressively cross-examined him and made certain comments indicating disbelief in appellant. The rule of law limiting the trial judge's participation in the examination of witnesses is well-settled:

Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by

the court . . . . The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance and from whom litigants expect absolute impartiality . . . . [H]e should not, during the trial, indicate an opinion, on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.

Accord, *Commonwealth v. Seabrook*, 475 Pa. 38, 379 A.2d 564 (1977); *Commonwealth v. Miller*, 442 Pa. 95, 275 A.2d 328 (1971); *Commonwealth v. Elmore*, 241 Pa.Super. 470, 362 A.2d 348 (1976); *Commonwealth v. Lanza*, 228 Pa.Super. 300, 323 A.2d 178 (1974); ABA Standards Relating to the Function of the Trial Judge, § 6.4, p. 19 (1972). *Commonwealth v. Toombs*, 269 Pa.Super. 256, 409 A.2d 876, 877 (1979), quoting, *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924); See also, *Commonwealth v. Williams*, 468 Pa. 453, 364 A.2d 281 (1976); *Commonwealth v. Laws*, 474 Pa. 318, 378 A.2d 812 (1977).

■ The first instance of alleged error occurred following appellant's cross-examination wherein the judge attempted to clarify the purchase price of methadrine. During appellant's direct examination, he stated that he and co-defendant Benson purchased $100.00 worth of "monster", or methadrine, from Mr. Carter on July 2 but that this substance was in reality something other than methadrine and had made appellant and Benson ill upon injection. Appellant then stated he and his companion returned to the Carter home to discover exactly what Carter had sold them. Since appellant's expectation of what he was buying was crucial to his defense, the court sought to establish the quantity of "monster" appellant could buy for $100.00. Appellant at first expressed ignorance as to the exact quantity, N.T. 4.217, but then stated that $15.00 would buy "a spoon", N.T. 4.219, and that $100.00 brings "enough 'monster' that would last me two weeks or so" N.T. 4.220. The court's questions were

clearly relevant to appellant's defense, were brief in nature, and did not indicate favor or disfavor with appellant. Moreover, the court clearly set forth in its instructions that the jury must be the sole judges of credibility. Finally, we note that counsel failed to object to the court's questions concerning drugs. We thus believe the issue to be waived and, in the alternative, without merit.

■ Appellant argues that the judge made a disparaging comment which limited the effect of counsel's cross-examination of a Commonwealth witness. Miss McKenzie testified that in the upstairs bedroom Benson struck her with a gun while the appellant struck Mr. Carter. On cross, counsel sought to impeach her through her testimony at the preliminary hearing wherein she stated:

"Then they asked did he have any money and he said no, he hadn't any money in two years. So then he struck Raymond and he struck me." N.T. 2.43.

The court sustained the Commonwealth's objection that the statement was not inconsistent, noting "[T]he grammar here is horrendous." N.T. 2.45. We agree that the preliminary hearing testimony was at best ambiguous as to who struck who. The court's comments did not prejudice appellant.

■ Appellant complains that the court labelled counsel's cross-examination of Joyce Carter as "trivial", N.T. 3.107. However, we note that the court nonetheless permitted counsel to continue his line of inquiry for some time. This comment, either in isolation or in tandem with other allegedly prejudicial comments, was simply not the type which would deprive appellant of a fair trial. See, *Commonwealth v. Ryder*, 467 Pa. 484, 359 A.2d 379 (1976) (court's observation that defense counsel's question of a witness was "ridiculous", held, did not deprive defendant of a fair trial). Similarly, the court's suggestion that the issue of drugs was "irrelevant" during cross-examination of a police witness, N.T. 3.222, was not prejudicial since counsel was permitted to pursue his line of inquiry. Further, the issue of drugs was not in fact relevant until the defense began its case.

 Appellant complains that the court improperly admitted evidence prejudicial to him. During cross-examination of Raymond Carter, counsel for co-defendant Benson elicited testimony to the effect that relatives of Benson offered money to Carter if he, Carter, would agree not to testify. N.T. 3.26–33. It was clear that there were no relatives of appellant who had made such an offer. N.T. 3.34. Thus, while the evidence may have been arguably prejudicial to Benson, appellant was not affected in any way. His counsel was granted leave to cross-examine Carter on this limited issue, N.T. 3.36, but in fact never did so. Later, counsel for Benson elected to call Benson's mother, Jessie Scott, who would testify that Carter had approached her shortly after the incident and said, "As long as [Benson] doesn't say anything about drugs . . . we are going to forget the whole thing", N.T. 4.104. Benson's counsel thus hoped to rebut Carter's allegations that Benson's relatives had offered restitution. The court refused to allow Ms. Scott to testify, finding her proffered evidence irrelevant and collateral. We again find no prejudice to appellant since it was always co-defendant Benson's relatives who were allegedly in dialogue with Carter. Appellant would gain nothing by Ms. Scott's testimony since he lost nothing by Carter's. Further, the offer of proof as to Ms. Scott did not suggest that a robbery had not taken place on July 3rd; it seemed Carter was attempting nothing more than to settle the parties' differences out of court.

 Appellant contends he was improperly limited in his cross-examination of several witnesses and was prevented from presenting his defense. We have carefully examined the instances in the record wherein Commonwealth objections to defense cross-examination were sustained. We do not find that appellant was limited in any way from presenting his defense. The court merely directed counsel to develop his defense during his own case in chief. The issue of drugs was simply not a relevant point until the defense began its case when appellant was presented with a full opportunity to present his defense. The scope of cross-

examination is within the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976); *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978). An abuse of discretion will not be found if the defendant's right to full and effective cross-examination is not abridged, even if the defense is not permitted to cross-examine in the manner it desires. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). In view of the full and vigorous cross-examination conducted by counsel and the unimpeded presentation of his defense, we find no error.

 Appellant cites several portions of the court's charge to the jury as requiring reversal.

This Court has consistently held that, in reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls. See *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972).

*Commonwealth v. Woodward*, 483 Pa. 1, 7, 394 A.2d 508, 510 (1978).

Appellant objected to the court's use of the word "victims" throughout the charge, arguing that employment of such a term assumes a robbery in fact occurred when the defense contended otherwise. The court corrected whatever arguable error may have occurred when it told the jury that the complainants were only "alleged victims". N.T. 3.99. Appellant took no further exceptions to this additional instruction.

 Appellant avers the court told the jury that the defendants' accusations of drugs and a drug sale did not eliminate the possibility of a robbery from the case. However, our review of this portion of the charge[3] reveals the

3. Appellant's objection is directed toward the following language:
 Now, you have heard accusations about drugs and you have also heard details about the very same accusations. The point I wish to

court was merely stressing that even if the jury believed the complainants were "bad", people involved with drugs, that they could still be victims of a robbery. Moreover, the court never, as appellant suggests, "assumed" that a robbery occurred; on the contrary, it very clearly set forth the presumption of innocence and the Commonwealth's burden of proof.

 Appellant avers that the court erred in refusing his requested points for charge, Nos. 9, 10, 11. However, these points merely set forth the elements of robbery and theft and incorporate appellant's version of the events of July 3. The court clearly instructed the jury as to the elements of the offenses and submitted all factual issues to them.

It is well established that a trial judge is not required to accept a requested instruction verbatim, even if legally correct and timely filed. The court is free to select its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Reston*, 224 Pa.Super. 80, 302 A.2d 428 (1973). Where the basic charge properly covers a requested point, it is not error for the trial judge to refuse to give additional instructions. *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975).

*Commonwealth v. Gardner*, 246 Pa.Super. 582, 371 A.2d 986, 989–90 (1977). There was no error.

 Similarly, there was no error in the instructions as bearing upon complainant Raymond Carter's criminal rec-

make is this: If you find there is any truth in the accusation, it would not be any less robbery if that were the defendants' intentions and that is actually what happened. You see, ladies and gentlemen, the law is determined to protect the powerful and also to protect the weak. It is determined to protect black people, it is determined to protect white people. It is determined to protect beautiful people, it is determined to protect ugly people. It is determined to protect bishops and burglars. It is determined to protect virgins and it is determined to protect prostitutes. N.T. 589.

ord. Carter admitted during the trial that he had been convicted in the past of burglary and receiving stolen property. N.T. 2.158–9. In the instructions, the court told the jury that this evidence is to be used only in testing the credibility of the witnesses and does not mean that he could not be a victim in the case. N.T. 5.84–5. We think the charge was in accord with existing law. Feldman, Pa.Trial Guide, § 6.34 (1973).

 Appellant next invokes the six-hour rule of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), in support of his contention that certain physical evidence should have been suppressed. The facts show that the crime occurred at approximately 1:00 a. m. on July 3, 1978 and that appellant was arrested shortly thereafter in the Carter home. At the North Central Detective Division, appellant was searched and items identified as taken in the robbery were seized from his person. At the suppression hearing, the Commonwealth did not produce evidence of the time of arraignment contending that the *Davenport* rule did not apply to physical evidence. We agree. The Supreme Court stated the *Davenport* holding succinctly:

In light of our experience since *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), we conclude that, pursuant to our supervisory power, we should adopt a rule under which the admissibility of any statement taken while the accused is in custody before preliminary arraignment is based on the length of the delay between arrest and arraignment. If the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial. If the accused is arraigned within six hours of arrest, pre-arraignment delay shall not be grounds of suppression of such statements except as the delay may be relevant to constitutional standards of admissibility. See *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). 471 Pa. at 286, 370 A.2d at 306 (footnotes omitted).

Compare, *Commonwealth v. Ryles*, 274 Pa.Super. 547, 418 A.2d 542 (S. 226/79; filed 1/18/80). By its very terms, the six-hour rule is only applicable to inculpatory statements[4] and not physical evidence. The inherent coercion during an unnecessary delay which may result in an invalid waiver of important constitutional rights is simply not present in Fourth Amendment cases where the search proceeds despite the accused's objections. Thus, the coercive influence against which *Futch* and *Davenport* were designed to guard is absent in the instant case since appellant was not asked to waive any rights. The court properly denied the motion to suppress.

Lastly, appellant contends he was arrested without probable cause and that a prima facie case was not established at the preliminary hearing. We have carefully examined these averments and find them completely lacking in merit. See *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 341 A.2d 198 (1975); *Commonwealth v. Rick*, 244 Pa.Super. 33, 366 A.2d 302 (1976); *Interest of Gonzales*, 266 Pa.Super. 468, 405 A.2d 529 (1979).

Judgment of sentence affirmed.

---

4. The rule probably applies to uncounseled lineup identifications as well. See, *Futch*, supra.