446 A.2d 951

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Prince A. GILLIARD, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1982.

Filed June 11, 1982.

Petition for Allowance of Appeal Denied Aug. 31, 1982.

470

Stephen P. Gallagher, Philadelphia, for appellant.

Ann C. Lebowitz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, CIRILLO and LIPEZ, JJ.

CIRILLO, Judge:

This is a direct appeal following a conviction of murder in the second degree for which the appellant, Prince A. Gilliard, received a mandatory sentence of life imprisonment.[1]

On July 29, 1980 at 11:30 P.M., police discovered the body of fifty-one year old Marshall Gibson, clad only in a bathrobe, in the fourth floor hallway of his apartment building at 237 South 48th Street in Philadelphia. He had been stabbed once inside the left shoulder blade with a 7¾ inch knife blade, sunk to its full depth. The appellant was arrested in Brunswick, Georgia on August 30, 1980 and charged with murder,[2] voluntary manslaughter,[3] involuntary manslaughter,[4] possession of an instrument of crime, generally,[5] and possession of an instrument of crime, concealed weapon.[6]

In a post-arrest, signed statement which was admitted into evidence at trial, the appellant acknowledged that he took a stereo, television set, and other items from the apartment, but claimed that he killed the decedent in self-defense. The appellant alleged that he and the decedent had been drinking and that the stabbing was a reaction to the pulling of a gun by the decedent during an argument. The appellant subsequently filed a Motion to suppress this statement as well as certain identification evidence. After argument, this Motion was denied. On January 13, 1981 the appellant was tried before the Honorable Theodore B. Smith, Jr. and a jury on the charge of murder. On January

1. Act of December 6, 1972, P.L. 1482, No. 334 § 1, as amended by the Act of March 26, 1974, P.L. 213, No. 46 § 2; 18 Pa.C.S.A. § 1102(b).

2. *Id.*, as amended by the Act of April 28, 1978, P.L. 84, No. 39 § 1; 18 Pa.C.S.A. § 2502.

3. *Id.*; 18 Pa.C.S.A. § 2503.

4. *Id.*; 18 Pa.C.S.A. § 2504.

5. *Id.*; 18 Pa.C.S.A. § 907(a).

6. *Id.*; 18 Pa.C.S.A. § 907(b).

20, 1981 the appellant was found guilty of murder in the second degree. The appellant then filed Motions in arrest of judgment and for a new trial. On May 27, 1981, after hearing, the Motions were denied and Judge Smith sentenced the appellant to the mandated sentence of life imprisonment. This appeal now follows.

In seeking a new trial, the appellant has made numerous allegations of error on the part of the lower court. He contends, first of all, that the lower court erred in refusing his Motion for mistrial when a Commonwealth witness, detective Miller, disclosed that the appellant had charges, other than the one he was tried on, pending against him at the time of his arrest in Georgia. On direct examination the detective was asked:

DISTRICT ATTORNEY: Now detective, on August 30, 1980, where did you take this defendant into custody?

WITNESS: He was in the Glynn County police department cell room.

The appellant's counsel made no objection at this point. However, on cross-examination, the appellant's attorney pursued the matter as follows:

DEFENSE COUNSEL: Now, Detective Miller, you testified on direct examination that you went to Glynn County, Georgia; is that right?

WITNESS: Yes, sir.

DEFENSE COUNSEL: And at that place is where you took the defendant, Prince Gilliard, under arrest?

WITNESS: Yes, sir.

DEFENSE COUNSEL: Now isn't it true Detective Miller that he was in the Glynn County cell room as a result of your request to the Brunswick County police to detain him for you as a result of this warrant?

WITNESS: It was on several different charges that he was there, sir. Mine plus—

The witness' answer was promptly cut off, thereby minimizing any prejudice as a result of the remark elicited by the appellant's counsel. The trial judge also offered to give

cautionary instructions,[7] but the appellant declined for tactical reasons.

It is well settled that the defendant must assume the risk of his counsel's questions and he cannot benefit on appeal when his own cross-examination elicited an unwelcome response. *Commonwealth v. Hall*, 264 Pa.Super. 261, 399 A.2d 767 (1979); *Commonwealth v. Hill*, 237 Pa.Super. 543, 353 A.2d 870 (1975). Also, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977). We find that the witness' answer was not elicited by the Commonwealth but rather was invited by the question posed by counsel for the appellant. Moreover, any prejudice to the appellant arising

**7.** This was the type of comment which could have been cured by appropriate instructions. In the case of *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981), the appellant asserted that the trial court erred in failing to declare a mistrial when a defense witness testified on cross-examination that the appellant had committed an unrelated crime. The witness, Ray Richardson, the 14 year old brother of the appellant, testified that his brother was last in his uncle's house, the scene of the killing, "when he burglarized it." The answer refers to the appellant's October, 1977 burglary of his uncle's house. The exchange at trial went as follows:

BY MR. KING [the prosecutor]:
Q. Mr. Richardson, before June 2nd, 1978, when was the last time you were inside of your Uncle Norman's house?
(Brief pause)
A. I'd say about . . .
THE COURT: What's the answer?
THE WITNESS: I'd say January.
BY MR. KING:
Q. When was the last time your brother, Eugene, was in your Uncle Norman's house before June the 2nd, 1978?
MR. MERRIWEATHER: Objection.
THE COURT: If you know. Overruled. Do you know when was the last time he was there?
THE WITNESS: It was when he burglarized it.
MR. MERRIWEATHER: Your Honor, may we see you at side bar, please.

The trial court then gave a prompt and decisive instruction to the jury to disregard the testimony. The Supreme Court held that under the circumstances, the trial judge's instruction to the jury was proper and if any prejudice resulted, it was insufficient for a mistrial. *See also: Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978).

from the response was minimal. Therefore, we reject this argument of the appellant.

The appellant next contends that the lower court erred in permitting the medical examiner, Dr. Robert Catherman, to testify concerning the results of a toxicology report when he did not personally perform the laboratory tests involved.

The appellant claimed that he and the decedent had been drinking on the night of the incident. However, Dr. Catherman testified, based upon a toxicology examination report, which was done as part of the decedent's autopsy, that there was no alcohol in the decedent's body at the time of death. Doctor Catherman had selected samples of the decedent's blood, urine, stomach contents, liver and bile and then submitted them for laboratory examination as to alcohol content. From the examination a toxicology report was prepared and it was from this report that Dr. Catherman testified.

A medical witness may express opinion testimony in medical matters based, in part, on reports of others which are not in evidence but upon which the expert customarily relies in the practice of his profession. *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971). Since the witness was an acknowledged expert and the standardized procedure in this instance was performed at his discretion, we find that the testimony was permissible. *See: Commonwealth v. Manning*, 495 Pa. 652, 435 A.2d 1207 (1981); *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979). This argument of the appellant is, therefore, without merit.

The appellant next contends that the lower court erred in refusing to declare a mistrial after the prosecutor made a number of allegedly improper comments during his closing argument.

The prosecutor's summation reviewed the Commonwealth's own properly admitted evidence and demonstrated the inconsistencies with the appellant's post-arrest statement. The district attorney was clearly entitled to do this. *See: Commonwealth v. Clark*, 280 Pa.Super. 1, 421 A.2d 374 (1980); *Commonwealth v. Gunderman*, 268 Pa.Super. 142, 407 A.2d 870 (1979).

■ In order to justify reversal, the language of the prosecutor must be such that its unavoidable effect would be to so prejudice the jury that they had a fixed hostility toward the defendant that prevented them from rendering a true verdict. *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979); *See also: Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). The appellant claims, in particular, that the following statement, made by the district attorney, requires the granting of a mistrial:

Defense counsel would like you to lose sight of the fact, ladies and gentlemen, that this knife went eight inches into this deceased's back. And I say this to you: If you want to show this defendant any mercy, you think of the mercy that he showed Mr. Gibson when he plunged . . .

■ Impropriety of prosecutorial summation does not always require the grant of a new trial. *Commonwealth v. Linder*, 284 Pa.Super. 327, 425 A.2d 1126 (1981). The effect of such remarks depends upon the atmosphere of the trial. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). We find that any prejudice to the appellant because of this remark was cured by the trial judge at the beginning of his charge,[8] when he instructed the jurors as follows:

Divorce all passions or prejudices or emotions of sympathy or bias from your minds. Clear your minds of these emotions. They're not evidence. Confine yourselves to the facts, the evidence in this case. Decide what the facts are, what happened, as best you can and then apply the law and reach a conclusion or a verdict in this case.

Therefore, we find this argument of the appellant to be without merit.

■ The appellant also contends that the trial court erred in not granting his demurrer to murder in the second degree and that the evidence was insufficient as a matter of law to sustain the verdict.[9]

**8.** *See: Commonwealth v. Johnson*, 496 Pa. 546, 437 A.2d 1175 (1981).

**9.** A Demurrer and a claim of insufficient evidence differ only with respect to the stage of the proceedings at which they are raised.

478

■ The test to be applied in ruling on either a demurrer or a claim that the evidence is insufficient to support a conviction is whether accepting as true the prosecution's evidence and all reasonable inferences therefrom, it is sufficient to support a finding by the jury that the defendant is guilty beyond a reasonable doubt. *Commonwealth v. Warren*, 475 Pa. 31, 379 A.2d 561 (1977), *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976).

■ The Commonwealth's evidence established that the appellant took the keys to Miss Thompson's apartment; that he entered the apartment without permission; that he took her property; and that he stabbed the decedent with a knife from Miss Thompson's kitchen. Also, the evidence established that the decedent's body was found in the hallway near the burglarized apartment and the decedent was responsible for watching Miss Thompson's apartment while she was away. Additionally, no alcohol or liquor bottles were found on the premises, nor did the autopsy reveal any alcohol in the decedent's body at the time of death, and the only gun found in the apartment was a revolver lacking a trigger mechanism, which was found buried under a mattress. From this evidence, as well as the fact that the decedent was wearing only a bathrobe at the time of his death, the jury could properly infer that the decedent had interrupted the appellant while he was burglarizing the apartment and that the appellant killed him in the course of the burglary. Therefore, we reject this argument of the appellant.

■ Next, the appellant contends that the trial court erred in allowing evidence of the burglary and theft to be admitted at trial. This is clearly an erroneous contention. The burglary of Miss Thompson's apartment was closely connected, both in time and place, to the murder of the building superintendent. To accept this argument of the appellant would preclude the Commonwealth from introduc-

*Commonwealth v. Duncan*, 473 Pa. 62, 66 n.2, 373 A.2d 1051 n.2 (1977); *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 436 n.5, 422 A.2d 1369 n.5 (1980).

ing evidence of the underlying felony in all prosecutions based on the theory of felony-murder. This is certainly not the law.[10] Accordingly, we find this claim made by the appellant to be without merit.

The appellant further contends that the trial court erred in not allowing him to introduce the criminal record of the deceased.

The appellant sought to demonstrate the decedent's alleged propensity for violence at the time of this incident by introducing evidence that the decedent had been convicted of aggravated assault and attempted rape in 1957, and burglary and impersonating a police officer in 1959. The probative value of evidence of convictions, offered to show violent propensities of a victim, depends on their being of the same nature as the offense on trial and not too distant in time, with the determination left to the sound discretion of the trial judge. *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971).

The decedent's past convictions occurred more than twenty years prior to this incident and are much too remote to be relevant. Therefore, the trial court did not abuse its discretion in excluding this evidence.

The appellant's other allegations of error are that: (1) the trial court erred in denying the appellant's Motion to suppress the post-arrest statement as the appellant had a mental disorder making him incapable of voluntarily waiving his constitutional rights; (2) the trial judge indicated that in his opinion there was not sufficient legal provocation for a finding of voluntary manslaughter; (3) the trial judge improperly refused to charge the jury on justification; (4) the trial judge reviewed only the Commonwealth's theory when giving additional instructions on the definition of second degree murder; and (5) the trial court erred in failing to charge the jury on involuntary manslaughter. After a careful and complete review of the record, we find these allegations of the appellant to be meritless.

10. *See; supra.*; 18 Pa.C.S.A. § 2502(b); also, *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980).

Accordingly, we affirm the judgment of sentence of the Court below.